UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD JACOBOWITZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RANGE RESOURCES CORPORATION, JEFFREY L. VENTURA, MARK S. SCUCCHI, and ROGER S. MANNY,<br><br>Defendants. | Case No. 2:21-cv-00301-RJC |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF HUGH MELNICK FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

**TABLE OF CONTENTS**

ARGUMENT...................................................................................................................5

    A.     THE COURT SHOULD APPOINT MELNICK AS LEAD PLAINTIFF..............5

         1.     Melnick has the Largest Financial Interest of any Movant..........................5

         2.     Melnick Satisfies the Requirements of Rule 23...........................................6

    B.     THE COMPETING MOTIONS OF FRENZEL AND ROTUNNO SHOULD BE DENIED ..........................................................................................8

         1.     Neither Frenzel nor Rotunno Possesses the Largest Financial Interest in this Action....................................................................................8

         2.     Rotunno is Subject to a Unique Defense ....................................................8

CONCLUSION.............................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allegheny Cty. Emples. Ret. Sys. v. Energy Transfer LP*, No. 20-200,
2020 U.S. Dist. LEXIS 27788 (E.D. Pa. Feb. 18, 2020) ...............................................3, 5, 6, 7

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994).................................................................................................3, 7

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)..............................................................................................3, 7

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................2, 4, 9, 10

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140-MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)........................................................9

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017).......................................................................................9

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) ......................................................2, 5

*In re Bally Total Fitness Sec. Litig., et al.*,
2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)......................................................4, 11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..............................................................................................3, 7

*In re Evolus Inc. Sec. Litig.*,
1:20-cv-08647 (S.D.N.Y.) ...................................................................................................10

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................................6

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004)........................................................................................2, 5

*Kux-Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016)...................................................................................10

*Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)...........................................................6

ii

*Nat'l Junior Baseball League v. PharmaNet Dev. Group, Inc.*,
   720 F. Supp. 2d 517 (D.N.J. 2010) ....................................................................................9

*Pio v. GM Co.*, No. 14-11191,
   2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ..................................................2, 6

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)....................................................................................................4, 9

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
   454 U.S. 464 (1982)........................................................................................................4, 9

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
   529 U.S. 765 (2000).........................................................................................................9

*Warth v. Seldin*,
   422 U.S. 490 (1975).........................................................................................................9

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ..........................................................................................9

## Statutes

15 U.S.C. §78u-4(a)(3)(B) ....................................................................................1, 4, 5, 8

Exchange Act Section 10(b) ....................................................................................4, 9

PSLRA ......................................................................................................... *passim*

## Rules

Fed. R. Civ. P. 23................................................................................................. *passim*

Lead Plaintiff Movant Melnick[1] respectfully submits this memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval his selection of Lead and Liaison Counsel in this Action (Dkt. No. 17); and in opposition to the competing motions of (i) Joseph Rotunno ("Rotunno") (Dkt. No. 20) and (ii) Henry Frenzel ("Frenzel") (Dkt. No. 11).[2]

## PRELIMINARY STATEMENT

The PSLRA requires that the Court appoint as Lead Plaintiff in this Action the "most adequate plaintiff" of the Class within the meaning of the statute. 15 U.S.C. §78u-4(a)(3)(B)(i). Pursuant to the PSLRA, a movant is entitled to a rebuttable presumption that it is the "most adequate plaintiff" if the movant both: (i) has the greatest financial interest in the outcome of the litigation among the eligible movants seeking appointment; and (ii) satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The "most adequate plaintiff" presumption may only be rebutted "upon proof . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Of the three competing movants before the Court, only Melnick meets the requisite statutory criteria for appointment as Lead Plaintiff. First, Melnick indisputably possesses the largest financial interest in this action, having incurred a loss of approximately *$1.49 million* on a FIFO basis or *$1.36 million* on a LIFO basis as a result of his Class Period purchases of Range

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meanings as set forth in Melnick's moving brief. *See* Dkt. No. 18.

[2] Initially one other putative class member, James Khedari ("Khedari"), filed a competing Lead Plaintiff motion. Dkt. No. 14. On May 27, 2021, Khedari filed a notice of non-opposition to the competing motions, stating that "[h]aving reviewed the competing motions filed in this action, [Khedari] does not appear to have the largest financial interest in this litigation within the meaning of the PSLRA." Dkt. No. 37.

Resources stock during the Class Period.  *See In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (emphasizing monetary loss as best measure of financial interest); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200, at *2-*4 (E.D. Pa. June 3, 2004) (same).  In addition, Melnick retained 60,679 shares of Range Resources stock at the end of the Class Period.  *See, e.g., Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *21-*22 (E.D. Mich. Oct. 24, 2014) (considering securities retained at end of class period in assessing financial interest).  The table below sets forth the respective financial interests of the three competing movants:

| Movant | Loss | | Retained Shares |
|---|---|---|---|
| | **FIFO** | **LIFO** | |
| Hugh Melnick | $1,487,026 | $1,347,325 | 60,679 |
| Henry Frenzel | $195,952 | $195,952 | 2,496 |
| Joseph Rotunno | *$0* | *$0* | *0* |

Considered on either a FIFO or LIFO basis, Melnick's loss is more than six times the size of the loss incurred by Frenzel, the only other eligible competing movant.  Likewise, Melnick retained 60,679 shares at the end of the Class Period, whereas Frenzel retained only 2,496 shares. Although one competing movant, Rotunno, claims to have incurred a loss of $492,621—which, in any event, would be only a fraction of Melnick's loss—Rotunno in fact has ***no losses whatsoever*** that are recoverable in this Action pursuant to the loss causation methodology mandated by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)—and, for the same reasons, is subject to a disqualifying unique defense related to his standing, as discussed in greater detail below.  It is thus beyond cavil that that Melnick possesses the largest financial interest in this litigation among the competing movants, and thus satisfies the first of the statutory criteria for appointment as Lead Plaintiff.

Second, in addition to his significant financial interest in this litigation, Melnick strongly satisfies the adequacy and typicality requirement of Rule 23. With respect to adequacy, Melnick's significant financial interest in the Action gives him an incentive to vigorously pursue recovery of his and the Class's losses; Melnick is aware of no conflicts between his interests and those of the Class; and in Pomerantz, Melnick has retained experienced counsel well qualified to prosecute the Class's claims, subject to the Court's approval. *See Allegheny Cty. Emples. Ret. Sys. v. Energy Transfer LP*, No. 20-200, 2020 U.S. Dist. LEXIS 27788, at *18-*19 (E.D. Pa. Feb. 18, 2020) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001)). Likewise, Melnick's claims are typical of the Class because, like other Class members, Melnick purchased Range Resources stock during the Class Period and was harmed by the misrepresentations and/or omissions that form the basis of the fraud alleged in the Action. *See Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)).

Possessing the largest financial interest of any movant and having established his adequacy and typicality within the meaning of Rule 23, Melnick is entitled to the statutory presumption that he is the "most adequate plaintiff" of the Class within the meaning of the PSLRA. Because he is neither subject to any unique defenses nor otherwise unable to fairly and adequately protect the interests of other Class members, there is nothing to rebut the presumption in favor of his appointment as Lead Plaintiff.

By contrast, neither of the two competing movants is eligible for appointment as Lead Plaintiff in this Action. Because Melnick possesses the largest financial interest in the Action, it is self-evident that neither Frenzel nor Rotunno can claim to possess the largest financial interest. This failure to meet the first of the statutory criteria alone mandates denial of both Frenzel's and Rotunno's motions.

Even assuming *arguendo* that Rotunno possessed a larger financial interest in the Action than Melnick, Rotunno is ineligible for appointment irrespective of his financial interest because he is subject to a unique defense. The PSLRA precludes appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(bb). Here, Rotunno is subject to the unique defense that he lacks standing because he sold **all** of his holdings of Range Resources stock prior to February 10, 2021, the date of the only corrective disclosure alleged in the Complaint in the Action. *See* Dkt. No. 1 ¶¶ 5-6, 42-44. Accordingly, Rotunno held no shares of Range Resources stock that declined in value as a consequence of the revelation of the Defendants' alleged fraud, and thus has no recoverable losses whatsoever in this Action pursuant the loss causation methodology mandated by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). With respect to fraud claims arising under Section 10(b) of the Exchange Act, "if . . . the purchaser sells the shares . . . before the relevant truth beings to leak out, **the misrepresentation will not have led to any loss.**" *Id.* at 342 (emphasis added). Lacking any injury traceable to the Defendants' alleged malfeasance, Rotunno will undoubtedly be subject to the unique defense that he lacks standing to pursue fraud claims in this action. *See*, *e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). "The PSLRA . . . provides that we ask simply whether [a movant] is **likely** to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005) (emphasis added). Here, if Rotunno were to be appointed as Lead Plaintiff, in the best-case scenario, he would be required to devote significant

4

time and resources to litigating the question of his standing, at the expense of his ability to prosecute the Class's fraud claims.  In the worst-case scenario, Rotunno will eventually be found to lack standing, thereby mandating dismissal of the Class's claims for reasons unique to Rotunno.

Accordingly, for the reasons set forth herein, Melnick respectively submits that the Court should grant his motion in its entirety and deny the competing motions of Frenzel and Rotunno.

**ARGUMENT**

**A.      THE COURT SHOULD APPOINT MELNICK AS LEAD PLAINTIFF**

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *Allegheny*, 2020 U.S. Dist. LEXIS 27788, at *17.  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representative is Melnick.

**1.   Melnick has the Largest Financial Interest of any Movant**

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  For the purposes of PSLRA lead plaintiff appointment, courts in the Third Circuit generally equate financial interest with monetary loss. *See, e.g.*, *Vicuron Pharms.*, 225 F.R.D. at 511; *Am. Bus. Fin. Servs.*, 2004 U.S. Dist. LEXIS 10200, at *2-*4.  As the table reflects (*see* p. 2 *supra*), Melnick incurred a loss of roughly $1.49 million on a FIFO basis or $1.35 million on a LIFO basis as a result of the fraud alleged in this Action. *See* Dkt. No. 19-1.  By comparison, Frenzel, the only other movant eligible for appointment,

5

incurred a loss of only $195,952, a fraction of Melnick's loss. *See* Dkt. No. 13-3. Rotunno, for his part, incurred *zero* losses as a result of the alleged fraud, as discussed below, despite erroneously claiming to have incurred a loss of $492,621—in any event, still considerably smaller than Melnick's loss. *See* Dkt. No. 21 at 2, 7; Dkt. No. 22 at *3-*8.

In addition to monetary loss, courts also assess financial interest with reference to the other three Lax-Olsten factors: (1) number of shares purchased during the class period; (2) the number of net shares purchased during the class period (*i.e.*, retained shares); and (3) the total net funds expended during the class period. *See Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998). Of the Lax-Olsten factors, courts also emphasize retained shares in addition to monetary loss. *See*, *e.g.*, *GM*, 2014 U.S. Dist. LEXIS 151205, at *21-*22. Here, also, Melnick leads the other movants by a considerable margin. Melnick retained 60,679 shares of Range Resources stock at the end of the Class Period, when the Defendants' alleged fraud came to light. *See* Dkt. No. 19-1. Frenzel, for his part, retained only 2,496 shares, whereas Rotunno retained *zero* shares. *See* Dkt. No. 13-3; Dkt. No. 22 at *3-*8.

Accordingly, Melnick plainly possess the largest financial interest in this litigation by any relevant metric.

### 2. Melnick Satisfies the Requirements of Rule 23

Melnick also readily satisfies the typicality and adequacy requirements of Rule 23. In appointing a lead plaintiff, the Court must determine whether the movant has made a *prima facie* showing of typicality and adequacy. *Allegheny*, 2020 U.S. Dist. LEXIS 27788, at *17.

Melnick easily satisfies the typicality requirement of Rule 23. Melnick's claims are typical of those of other Class members because, like other Class members, Melnick purchased Range Resources stock during the Class Period and was harmed by the misrepresentations and/or

omissions that form the basis of the fraud alleged in the Action. Melnick's claims are thus "typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck*, 457 F.3d at 295-96 (quoting *Baby Neal*, 43 F.3d at 55).

Melnick has also demonstrated his adequacy to serve as Lead Plaintiff in this Action. First, as set forth *supra*, Melnick has a significant financial interest in the outcome of this litigation—specifically, his loss of more than $1 million as a result of the alleged fraud—that will ensure Melnick's vigorous and adequate prosecution of the Class's claims. *Allegheny*, 2020 U.S. Dist. LEXIS 27788, at *18-*19 (citing *Cendant*, 264 F.3d at 265). Second, Melnick has no conflicts with other Class members. To the contrary, Melnick's interests are perfectly aligned with the Class's interest in maximizing a recovery for the Class due to the alleged fraud in this Action. *Beck*, 457 F.3d at 296.

Further demonstrating his adequacy, Melnick has submitted a detailed Declaration attesting to, *inter alia*, his background, including his investment experience; his reasons for seeking appointment as lead plaintiff; his understanding of the significance of his motion and the responsibilities of a lead plaintiff; and his readiness to undertake those responsibilities on behalf of the Class, including by supervising his chosen counsel. *See generally* Dkt. No. 19-4.

Melnick has further demonstrated his adequacy by selecting qualified counsel, Pomerantz, with substantial experience litigating securities class actions. *See* Dkt. No. 19-5. Since 2018 alone, Pomerantz has secured a $3 billion recovery on behalf of investors in Petróleo Brasileiro S.A. - Petrobras securities, the largest settlement ever in a class action involving a foreign issuer; an $80 million settlement on behalf of Yahoo! Inc. investors; and a $110 million settlement on behalf of investors in Fiat Chrysler Automobiles N.V. *See id.*

For all of the foregoing reasons, Melnick strongly satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's strong presumption of being the Lead Plaintiff.

To overcome the strong presumption entitling Melnick to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is subject to unique defenses or otherwise inadequate to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists with respect to Melnick and any suggestions to the contrary should be rejected as mere speculation.

## B. THE COMPETING MOTIONS OF FRENZEL AND ROTUNNO SHOULD BE DENIED

### 1. Neither Frenzel nor Rotunno Possesses the Largest Financial Interest in this Action

Because Melnick possesses the largest financial interest in this litigation—the first of the PSLRA's criteria for appointment as Lead Plaintiff (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb))—it is self-evident that neither Frenzel nor Rotunno possesses the largest financial interest. This failure to meet the first of the PSLRA's statutory criteria mandates denial of both of their motions.

### 2. Rotunno is Subject to a Unique Defense

Even assuming *arguendo* that Rotunno did possess a larger financial interest in the Action than Melnick, the PSLRA would still mandate denial of his motion irrespective of his financial interest. In addition to possessing the largest financial interest in the litigation, the "most adequate plaintiff" of the Class must also satisfy the adequacy and typicality requirements of Rule 23 (*see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)) and may not be subject to any unique defenses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Here, Rotunno is disqualified from consideration because he is subject to the unique defense that he lacks standing, having sold all of his shares of Range

Resources stock prior to February 10, 2021, the date of the only corrective disclosure alleged in the Complaint, and thus was not injured when the value of Range Resources stock fell following the revelation of the Defendants' malfeasance. "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Valley Forge Christian College*, 454 U.S. at 472). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. Standing is granted by Article III "only to redress or otherwise to protect against injury to the complaining party." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771–72 (2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). In a securities fraud action under Section 10(b) of the Exchange Act, injury-in-fact requires that the plaintiff actually held the securities at issue on which the alleged fraud was revealed to the market—*i.e.*, that the economic loss that the plaintiff incurred on its investment was actually caused by the revelation of the fraud, rather than by other market forces. *See*, *e.g.*, *Dura*, 544 U.S. at 343-44. "In other words . . . the decline in the stock price [must be] caused by the market's discovery of the defendant's fraud." *Nat'l Junior Baseball League v. PharmaNet Dev. Group, Inc.*, 720 F. Supp. 2d 517, 559 (D.N.J. 2010). As the Supreme Court held in *Dura*, "if . . . the purchaser sells the shares . . . before the relevant truth beings to leak out, ***the misrepresentation will not have led to any loss***." *Dura*, 544 U.S. at 342 (emphasis added). *See also Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017) (disregarding losses not "directly tied to the misconduct alleged in the complaint"); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014) ("[T]hose class members who sold their . . . common stock before . . . the first corrective price decline[] cannot be said to have suffered economic loss caused by [the] alleged fraud."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140-MHP, 2008 U.S. Dist. LEXIS 64633, at *11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be

9

demonstrated **with respect to shares retained as of the date of the corrective disclosure**")
(emphasis added).; *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016)
("[I]n evaluating financial loss, courts must consider only those losses proximately caused by the
defendants' misrepresentations or other fraudulent conduct.").

Rotunno attests that he sold the last of his holdings of Range Resources stock on December
8, 2020. *See* Dkt. No. 22-2 at*3-*8. As the Complaint in the Action alleges, the Defendants'
misconduct did not come to light until February 10, 2021, at which point the value of the
Company's stock fell precipitously. *See* Dkt. No. 1 ¶¶ 5-6, 42-44. Having sold all of his Range
Resources shares more than two months earlier, Rotunno held **zero** shares of Range Resources
stock when the alleged fraud was revealed to the market on February 10, 2021, meaning that he
incurred **no** economic loss whatsoever that is traceable to the Defendants' misconduct.

Melnick notes that Rotunno's counsel, Faruqi & Faruqi, LLP ("Faruqi"), is demonstrably
aware of the loss causation principles articulated in *Dura* and its progeny. Just five months ago,
in *In re Evolus Inc. Sec. Litig.*, 1:20-cv-08647 (S.D.N.Y.) ("*Evolus*"), Faruqi strenuously opposed
the appointment of a lead plaintiff movant who—like Rotunno in this Action—lacked standing
because he sold all of his Evolus Inc. securities months before the disclosure of the alleged fraud.
*See Evolus* Dkt. No. 57 at 5 (citing *Dura* and arguing that "[h]aving sold all of his Evolus securities
more than *five months* earlier when Evolus stock was still artificially elevated by Defendants'
fraudulent statements to the market, Ahmad held zero Evolus securities when the alleged fraud
was revealed to the market on July 6, 2020, meaning that he incurred no economic loss whatsoever
that is traceable to the Defendants' misconduct, an issue that is likely to be raised later in this case
by Defendants challenging class certification.").

"The PSLRA . . . provides that we ask simply whether [a movant] is ***likely*** to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at *19 (emphasis added). If appointed as a Lead Plaintiff, Rotunno will clearly be forced to spend considerable time and energy litigating the question of his standing, at the expense of his ability to pursue fraud claims on behalf of the Class. There is simply no reason to burden the Class with a Lead Plaintiff subject to such debilitating issues.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in his moving brief (Dkt. No. 18), Melnick respectfully requests that the Court grants his motion in all respects and deny the competing motions of Frenzel and Rotunno.

Dated: May 28, 2021                    Respectfully submitted,

                                        s/ Alfred G. Yates, Jr.
                                        Alfred G. Yates, Jr. (PA17419)
                                        Gerald L. Rutledge (PA62027)
                                        LAW OFFICE OF
                                        ALFRED G. YATES, JR., P.C.
                                        1575 McFarland Road, Suite 305
                                        Pittsburgh, Pennsylvania 15216
                                        Telephone: (412) 391-5164
                                        Facsimile: (412) 471-1033
                                        yateslaw@aol.com

                                        *Counsel for Movant Hugh Melnick and*
                                        *Proposed Liaison Counsel for the Class*

                                        POMERANTZ LLP
                                        Jeremy A. Lieberman
                                        (admitted *pro hac vice*)
                                        J. Alexander Hood II
                                        (admitted *pro hac vice*)
                                        600 Third Avenue
                                        New York, New York 10016
                                        Telephone: (212) 661-1100

11

Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Movant Hugh Melnick and*
*Proposed Lead Counsel for the Class*

12