**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **HOWARD JACOBOWITZ, Individually and On Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No. 4:21-cv-00751-P** |
| **RANGE RESOURCES CORPORATION, JEFFREY L. VENTURA, MARK S. SCUCCHI, ROGER S. MANNY, and DORI A. GINN** | § § § § § | |
| **Defendants.** | § | |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

---

**WICK PHILLIPS GOULD & MARTIN LLP**
David J. Drez III (State Bar No. 24007127)
Ian Brinton Hatch (State Bar No. 24123444)
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
david.drez@wickphillips.com
ian.hatch@wickphillips.com

**WILLIAMS & CONNOLLY LLP**
Amanda M. MacDonald (admitted pro hac vice)
Michael J. Mestitz (admitted pro hac vice)
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
amacdonald@wc.com
mmestitz@wc.com

*Attorneys for Defendants Range Resources Corporation, Jeffrey L. Ventura, Mark S. Scucchi, Roger S. Manny, and Dori A. Ginn*

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 5

I. PLAINTIFF FAILS TO PLEAD ANY MATERIALLY FALSE OR MISLEADING STATEMENT. ..... 6

A. Range's Statements Regarding Its Belief of Its Substantial Legal Compliance Are Not Actionable. ..... 6

B. Range's Statements Regarding Ongoing Legal Matters Are Not Actionable. ..... 10

C. Range's Opinions Regarding AROs Are Not Actionable. ..... 13

D. Range's Code of Ethics and Corporate Values Are Not Actionable. ..... 15

E. Range's SOX Certifications Are Not Actionable. ..... 16

II. PLAINTIFF FAILS TO PLEAD ANY PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER. ..... 17

III. PLAINTIFF FAILS TO PLEAD CLAIMS UNDER SECTION 20(A). ..... 20

CONCLUSION ..... 20

CERTIFICATE OF SERVICE ..... 22

CHART OF ALLEGED FALSE OR MISLEADING STATEMENTS ..... Chart-1

## TABLE OF AUTHORITIES

### CASES

*Chapman v. Mueller Water Prods., Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020)........................................................................ 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .......................................................................................... 15

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)............................................................................................ 10

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)........................................................................................................... 5

*Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Six Flags Ent. Corp.*,
2021 WL 807251 (N.D. Tex. Mar. 3, 2021) ........................................................... *passim*

*Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*,
905 F.3d 892 (5th Cir. 2018) .......................................................................................... 16

*Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd*, 771 F. App'x 51 (2d Cir. 2019)......................... 13

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp. Inc.*,
537 F.3d 527 (5th Cir. 2008) ..................................................................................... 15, 20

*In re Capstead Mortg. Corp. Sec. Litig.*,
258 F. Supp. 2d 533 (N.D. Tex. 2003) .............................................................................. 3

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009)............................................................................... 11

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018)....................... 15

*In re KBR, Inc. Sec. Litig.*,
2018 WL 4208681 (S.D. Tex. Aug. 31, 2018) ................................................................... 17

*In re Key Energy Servs., Inc. Sec. Litig.*,
166 F. Supp. 3d 822 (S.D. Tex. 2016) ......................................................................... 16, 19

*In re Lions Gate Ent. Corp. Sec. Litig.*,
165 F. Supp. 3d 1 (S.D.N.Y. 2016)................................................................................... 11

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
307 F. Supp. 3d 583 (S.D. Tex. 2018), *aff'd*, 777 F. App'x 726 (5th Cir. 2019) ......... 6, 7, 9, 16

*Police & Fire Ret. Sys. v. Plains All Am. Pipeline, L.P.*,
777 F. App'x 726 (5th Cir. 2019) .......... 7

*In re XP Inc. Sec. Litig.*,
2021 WL 861917 (E.D.N.Y. Mar. 8, 2021) .......... 10, 11, 12

*Mortensen v. AmeriCredit Corp.*,
123 F. Supp. 2d 1018 (N.D. Tex.), *aff'd*, 240 F.3d 1073 (5th Cir. 2000) .......... 19

*Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
935 F.3d 424 (5th Cir. 2019) .......... 5, 19

*Neiman v. Bulmahn*,
854 F.3d 741 (5th Cir. 2017) .......... 17

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018), *aff'd*, 771 F. App'x 51 (2d Cir. 2019) .......... 13

*Omnicare, Inc. v. Labourers District Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .......... *passim*

*Owens v. Jastrow*,
789 F.3d 529 (5th Cir. 2015) .......... 19

*Purser v. Coralli*,
2012 WL 5875600 (N.D. Tex. Nov. 21, 2012) .......... 6

*Rosenzweig v. Azurix Corp.*,
332 F.3d 854 (5th Cir. 2003) .......... 17

*Shushany v. Allwaste, Inc.*,
992 F.2d 517 (5th Cir. 1993) .......... 14

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019) .......... 8

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) .......... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......... 17

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
273 F. Supp. 3d 650 (N.D. Tex. 2017) .......... 17

## STATUTES AND RULES

Private Securities Litigation Reform Act ("PSLRA") .................................................. 5, 14, 17, 18
15 U.S.C. § 78u-4(b)(1) ........................................................................................................ 5

Securities Act of 1933 ............................................................................................................. 9
15 U.S.C. § 77k ("Section 11") ............................................................................................... 9

Securities Exchange Act of 1934 ........................................................................................ 5, 20
15 U.S.C. § 78j(b) ("Section 10(b)") ................................................................................... 5, 20
15 U.S.C. § 78t(a) ("Section 20(a)") ........................................................................................ 20

25 Pa. Code § 78.102(4) ........................................................................................................... 3

Fed. R. Civ. P. 9(b) ........................................................................................................ 5, 14, 17

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 17

## INTRODUCTION

Regulatory investigations are a fact of life for corporations in America—all the more so for highly regulated companies like Range Resources ("Range"), a Fort Worth-based energy company. Range's investors are well aware of this; its securities filings detail the potential impact that federal, state and local regulations, and the political climate, have on its business. Range works hard to meet the myriad regulatory requirements to which it is subject. But, like every other company in its field, it makes errors and incurs regulatory fines from time to time. This, again, is something Range's investors already know—not only through the exercise of basic common sense, but also because Range consistently warns in its securities filings that while "[w]e believe we are in substantial compliance with currently applicable laws and regulations, . . . past non-compliance with environmental laws or regulations may be discovered." *E.g.*, App. 039.

Plaintiff now argues that a relatively insignificant regulatory infraction—a $294,000 civil penalty for, in the regulator's view, Range's failure to categorize properly a small number of its natural-gas wells in Pennsylvania—rendered this and other statements in Range's securities filings over a four-year period fraudulently false and misleading. Plaintiff cannot make out such a claim under any stretch of the law. None of Range's statements was false: each of the categories of statements Plaintiff identifies is either obviously true or not actionable under black letter law. Nor can Plaintiff plausibly allege that more detailed disclosure was required for a routine regulatory inquiry—particularly one that culminated in an obviously immaterial fine. Range expressly cautioned investors that it was "the subject of, or party to, a number of pending or threatened legal actions," but that it believed that any potential resulting liability "will not have a material adverse effect on our consolidated financial position." App. 127. The Pennsylvania regulator's inquiry was just that; a pending legal action that had nothing close to a material adverse impact on the company. Finally, Plaintiff half-heartedly suggests that Range's accounting estimates of its Asset

Retirement Obligations ("AROs") were off in some way, but he doesn't explain why or how. Nor can he; there was no restatement of Range's financials, nor any adjustment made to the AROs after the investigation concluded.

Plaintiff's claims fail for the independent reason that he fails to plead any even remotely cogent theory of scienter. Instead of the particularized pleading and the compelling inference of scienter federal securities laws require, Plaintiff offers only generalities and speculation—exactly the type of unsupported and speculative allegations Congress intended to guard against when it enacted the heightened pleading requirements for scienter in securities cases.

Plaintiff has not stated, and cannot state, a viable securities claim based upon an immaterial penalty paid by Range for an alleged regulatory infraction. The Amended Complaint should be dismissed with prejudice.

**BACKGROUND**

Range is a natural gas and natural gas liquids exploration and production company based in Fort Worth, Texas. The scope of Range's business is significant: at the end of 2019, Range's assets were valued at over $6.6 billion, and it had $2.8 billion in total revenues and other income. App. 267, 268. As of 2016—the beginning of the relevant period—Range owned 4,526 net producing natural gas wells in the Appalachian Basin, and 729 wells elsewhere in the United States. App. 037–38. By the end of 2019, Range had divested many of its properties and operations, but still owned 1,272 net producing wells in Appalachia. AC ¶ 2.

Pennsylvania regulations require Range to designate its wells as "active," "inactive," or "abandoned." AC ¶ 24. The division between these classifications is not always simple: a well may be classified as "inactive" even if it is no longer producing natural gas if it meets certain criteria—for example, if it will be used as a disposal well, a storage well, an observation well, or

for "other purposes." AC ¶ 26; 25 Pa. Code § 78.102(4); *see also* AC ¶ 27 (future use of the well may be for recovery, storage, approved disposal, or other uses related to oil and gas production). By contrast, a well is deemed "abandoned" if it has not been used to produce anything for 12 consecutive months, and cannot be identified as inactive. AC ¶ 27.

This suit piggybacks on a Pennsylvania Department of Environmental Protection ("DEP") investigation concluding that, in the four-year period between July 2013 and October 2017, Range allegedly misclassified 42 wells—approximately 0.93% of Range's wells in the Appalachian Basin, and 0.8% of Range's wells overall as of December 31, 2016. After investigating, DEP settled with Range for a $294,000 civil fine—a tiny sliver of Range's total assets. AC ¶ 36. The settlement was executed on January 7, 2021. *Id.*

DEP announced the settlement by press release more than a month later, during the trading day on February 10, 2021. AC ¶¶ 105, 107. The press release is the purported corrective disclosure upon which Plaintiff's claims rely. AC ¶ 105. But that day, Range's stock closed *up* from its $9.93 open to $10.19. App. 307.[1] The next day, Range's stock closed slightly down at $9.57 per share—a 62 cent decline the Plaintiff characterizes as "precipitous." AC ¶¶ 107, 108. The price rebounded immediately: on February 12, Range's stock closed at $10.16, and at $10.94 the next trading day. App. 307. Nevertheless, Plaintiff initiated this litigation.

Plaintiff claims that Range and four of its senior executives committed securities fraud by making false and misleading statements regarding the status of Range's wells, the related accounting, the DEP investigation, and Range's statement of ethics. AC ¶ 7. The central premise of Plaintiff's suit is that Range and its executives must have known that the company had

---

[1] In evaluating a motion to dismiss, the Court may consider the SEC filings and other documents incorporated by reference in the Amended Complaint, as well as other judicially-noticeable matters including stock prices and other matters of public record. *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 543 n.2 (N.D. Tex. 2003).

misclassified its wells, hid that information from investors, and that as a result, Range's securities filings from 2016 to 2020 were necessarily false and misleading.[2] Plaintiff posits that Range's securities disclosures were false or misleading because (i) Range's wells were improperly designated "since at least 2013"; (ii) Range failed to plug these wells in accordance with applicable state regulations; (iii) Range's alleged conduct exposed it to liability and "artificially decreased the Company's periodically reported cost estimates to plug and abandon its wells"; (iv) Range was the subject of a DEP investigation; and (v) the DEP investigation "foreseeably" led to the Company incurring a regulatory fine. *E.g.*, AC ¶ 7. Plaintiff premises his claim on five categories of statements in Range's annual Form 10-K filings and/or its quarterly Form 10-Q filings and its website. To allege the falsity of each statement, Plaintiff copy-pastes his boilerplate theory of the case: that *every* statement is false or misleading simply because Range allegedly misclassified wells, failed to disclose this particular DEP investigation, and was ultimately subject to a $294,000 civil fine. *E.g.*, AC ¶¶ 39, 41, 44, 70.

Plaintiff does not attribute *any* of the alleged false or misleading statements directly to the any of the named defendants: CEO and President Jeffrey Ventura, CFO Mark Scucchi, former CFO Roger Manny, and Controller and Principal Accounting Officer Dori Ginn (the "<u>Individual Defendants</u>"). AC ¶¶ 17–20. Instead, Plaintiff alleges generally that the Individual Defendants signed the filings or Sarbanes-Oxley Act ("<u>SOX</u>") certifications, "possessed the power and authority to control" Range's statements, received copies of Range's SEC filings, and "[b]ecause of their positions with Range Resources, and their access to material information available to them

---

[2] Plaintiff asserts that Range "admitted to [its] misconduct" when it executed the settlement agreement with the DEP. AC ¶ 36. This is incorrect: the paragraphs Plaintiff cites as having been adopted by Range—"Paragraphs A through H, K and M"—concern only certain background facts. AC ¶ 36 & n.5 (citing https://files.dep.state.pa.us /newsroom/NewsroomPortalFiles/Range_Executed_CACP.pdf). The agreement includes no concession of wrongdoing by Range, and the DEP's view that Range failed to comply with applicable regulations is memorialized in Paragraphs I, J, L, and N through P, to which Range specifically *did not* assent. *See id*.

but not to the public, . . . knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public." AC ¶ 22.

**ARGUMENT**

As the Court is well aware, to state a claim under Section 10(b), Plaintiff must allege facts sufficient to establish (1) that the defendant made a materially false or misleading statement, (2) that the defendant did so with scienter, (3) that the statement was made in connection with the purchase or sale of a security, (4) that the plaintiff relied upon the statement, (5) economic loss, and (6) loss causation. *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)). Alleging securities fraud is difficult by design. "Pleadings in federal securities fraud actions must also comply with the strictures imposed by the Private Securities Litigation Reform Act ('PSLRA')." *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Six Flags Ent. Corp.*, 2021 WL 807251, at *15 (N.D. Tex. Mar. 3, 2021) (Pittman, J.). The statute "has raised the pleading bar even higher and enhances Rule 9(b)'s particularity requirement." *Id.* To adequately plead a false or misleading statement, a plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). For each statement, Plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." *Six Flags*, 2021 WL 807251, at *15 (citation omitted).

Plaintiff falls woefully short of that standard here. The Amended Complaint is devoid of well-pleaded allegations that Defendants made materially false or misleading statements, much less that they did so with scienter.[3] Moreover, none of the statements Plaintiff identifies could be

---

[3] For the Court's convenience, a chart of the statements at issue from Range's securities filings is appended to this Memorandum. The chart identifies the statement as alleged in the Amended Complaint, the location of the statement in the Appendix and Range's securities filings, and the reasons the statement is not actionable.

misleading to a reasonable investor when read in context, and most are inactionable under black-letter law for additional reasons. As such, Plaintiff's complaint should be dismissed with prejudice. *See Six Flags*, 2021 WL 807251, at *27 (dismissing with prejudice); *Purser v. Coralli*, 2012 WL 5875600, at *5 (N.D. Tex. Nov. 21, 2012) (same).

## I. PLAINTIFF FAILS TO PLEAD ANY MATERIALLY FALSE OR MISLEADING STATEMENT.

### A. Range's Statements Regarding Its Belief of Its Substantial Legal Compliance Are Not Actionable.

Each of Range's relevant Form 10-Ks stated: "We believe we are in substantial compliance with currently applicable laws and regulations and the continued substantial compliance with existing requirements will not have a material adverse effect on our financial position, cash flows or results of operations." AC ¶ 53; App. 039.[4] Plaintiff's case rests on the premise that, because the DEP concluded that Range miscategorized a small fraction of its wells, this statement was false in that Range was not in "substantial compliance" with relevant law and regulations for a four-year class period. This is simply incorrect, and precedent forecloses Plaintiff's claim.

The Southern District of Texas's decision in *In re Plains All American Pipeline, L.P. Securities Litigation* is instructive. 307 F. Supp. 3d 583, 635 (S.D. Tex. 2018), *aff'd*, 777 F. App'x 726 (5th Cir. 2019) (per curiam). Plains, a pipeline company, stated in its SEC filings that it believed it was in "substantial compliance" with all federal and state regulatory requirements. *Id.* at 600, 611. Thereafter, one of Plains' pipelines ruptured and spilled almost 150,000 gallons of oil into the Pacific Ocean, resulting in a $257 million cleanup operation. *Id.* at 602. After the spill, Plains was criminally indicted on 42 misdemeanor counts and 4 felony counts, and its regulator

---

[4] Plaintiff correctly alleges that many of the challenged statements are "substantively the same" across Range's securities filings. *E.g.*, AC ¶ 45. For convenience, Defendants generally cite to Range's 2016 10-K and the accompanying cautionary language and disclaimers, which are also substantively identical across Range's filings. The relevant portion of each filing, however, has been included in the Appendix to this Memorandum.

concluded that Plains caused the spill by deviating from federal standards. *Id.* at 605–06. Investors filed a securities suit challenging, among other things, Plains' statements on legal compliance.

The Southern District of Texas dismissed the case, and the Fifth Circuit affirmed. The court held that "[a] reasonable investor would not understand Plains's high-level, general statements in the filings, that it was operating in substantial compliance with regulatory requirements, as implicitly assuring absolute compliance, even with the regulations that the violation notices addressed." *Plains*, 307 F. Supp. 3d at 635. Moreover, "[a] reasonable investor would understand the use of 'hedges and disclaimers,' such as the phrase '*substantial* compliance,' and would not reasonably infer that Plains had fully complied with every regulation or requirement." *Id.* (emphasis in original). "Nor would a reasonable investor infer that Plains' regulators had or would have no objections to the company's compliance on any pipeline. Instead, reasonable investors would understand that, for a very large pipeline company, with a huge network of pipelines, in a heavily regulated industry, notices of regulatory violations are common." *Id.* Affirming, the Fifth Circuit observed that Plains' statements "were not rendered false or misleading by the failures on Lines 901 and 903, which constitute a small percentage both of the overall pipelines and of the HCA pipelines." 777 F. App'x at 731.

The same reasoning compels dismissal here. Range's settlement with the DEP and its payment of a $294,000 civil fine does not render false or misleading its prior statements that it believed it was in "substantial compliance" with relevant regulations. Nor does Range's purported misclassification of "a small percentage" of its wells, 777 F. App'x at 731, mean it committed fraud. As in *Plains*, no reasonable investor could read Range's statement as a guarantee of *absolute* compliance with the law. Immediately after Range's statement that it believed it was in substantial compliance, Range cautioned—in language that Plaintiff omits from its recitation of Range's

filings, but which must be considered as part of the whole disclosure—that "current regulatory requirements may change, currently unforeseen environmental incidents may occur or past non-compliance with environmental laws or regulations may be discovered." App. 039. Each 10-K accompanied this statement with a lengthy discussion of some of the regulatory and political factors facing the business, App. 039–44, then directed readers to *additional* warnings in a section entitled "[t]he natural gas and oil industry is subject to extensive regulation," App. 050. This page-long advisory cautioned investors that "The natural gas and oil industry is subject to various types of regulations in the United States by local, state and federal agencies," and warned that "[f]ailure to comply with these laws and regulations may . . . subject us to administrative, civil and criminal penalties as well as corrective action orders," and the company "could be liable for personal injuries, property damages, oil spills, discharges of hazardous materials, remediation and clean-up costs, natural resource damages and other environmental damages." App. 050. That Range's statements were "framed by acknowledgements of the complexity and numerosity of applicable regulations . . . suggests caution (rather than confidence) regarding the extent of [the company]'s compliance." *Singh v. Cigna Corp.*, 918 F.3d 57, 64 (2d Cir. 2019) (affirming dismissal of similar allegations).

Plaintiff faces another hurdle: Range's belief in its substantial compliance was not a statement of *fact*, but a statement of *opinion*. Unlike statements of fact, opinions are actionable only in the limited circumstances articulated by the U.S. Supreme Court in *Omnicare, Inc. v. Labourers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015). "[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong." *Id.* at 186 (citation omitted). Thus, securities law "does not allow investors to second-guess inherently subjective and uncertain assessments,"

or to "Monday morning quarterback an issuer's opinions." *Id.*[5] Nor could any investor have been misled about the subjective nature of Range's assessment: Range's opinion was accompanied by the caution that Range was subject to many complex regulatory requirements, and it might be found noncompliant and subject to regulatory enforcement. Just as in *Plains*, "[t]he overlapping hedges and qualifications would inform a reasonable investor's understanding that [the company] could express only an opinion that it was operating in substantial—not perfect, complete, or consistent—compliance with the relevant laws." 307 F. Supp. 3d at 635.

To state a claim based on an opinion, Plaintiff must allege that (1) the speaker did not "actually hold[] the stated belief," (2) the opinion included embedded facts that "were untrue," or (3) the opinion "omit[ted] material facts about the issuer's inquiry into or knowledge concerning [the] statement of opinion"—"facts about how the speaker has formed the opinion"—that "conflict with what a reasonable investor would take from the statement itself." *Id.* at 184, 186, 188–89. But Plaintiff has not pleaded any of the three prongs of *Omnicare* allowing it to challenge Range's statement that it believed it was in substantial compliance, nor can he.[6] First, Plaintiff has not alleged that Range did not actually believe it was in substantial compliance with the relevant regulations during the class period. *See infra*, pp. 17–20 (discussing scienter). Second, Plaintiff has not alleged that Range's compliance opinion contained false "embedded facts." Indeed, he cannot; this prong addresses opinions that contain objective falsehoods within them, but Range's opinion regarding compliance, like the equivalent statement in *Omnicare*, is a statement of "pure

---

5 Although *Omnicare* concerned a suit under Section 11 of the Securities Act of 1933, it applies equally to Section 10(b). *Plains*, 307 F. Supp. 3d at 616 n.6.

6 Range's statement is substantially similar to the statement the Supreme Court considered in *Omnicare*: "We believe our contract arrangements . . . are in compliance with applicable federal and state laws." *Omnicare*, 575 U.S. at 179. However, Range went beyond the language in *Omnicare* and provided further "hedging" language, stating its belief it was in "*substantial* compliance," rather than guaranteeing actual compliance in all respects. *Plains*—which also analyzed the company's compliance opinion under *Omnicare*—observed this "hedging" language "creates a higher bar" under *Omnicare*. *Plains*, 307 F. Supp. 3d at 634–35.

opinion." *Omnicare*, 575 U.S. at 186. Finally, Plaintiff alleges nothing whatsoever about the inquiry Range undertook, nor how it formed its opinion. Moreover, even if Range's statement that it believed it substantially complied with all relevant regulations were false—and it was not—Plaintiff's failure to plead the falsity of Range's opinion is independently fatal to his claims.

**B. Range's Statements Regarding Ongoing Legal Matters Are Not Actionable.**

Plaintiff also alleges that Range's securities filings were fraudulent because they omitted mention of the particular DEP investigation that ultimately settled, with Range agreeing to pay a $294,000 civil penalty. Not surprisingly, courts routinely reject such claims. As Plaintiff concedes, each of Range's periodic filings warned investors that it was subject to a variety of ongoing legal actions at any given time, but that it did not anticipate any resulting material liability:

> We are the subject of, or party to, a number of pending or threatened legal actions and claims arising in the ordinary course of our business. While many of these matters involve inherent uncertainty, we believe that the amount of the liability, if any, ultimately incurred with respect to proceedings or claims will not have a material adverse effect on our consolidated financial position as a whole or on our liquidity, capital resources or future annual results of operations.

AC ¶ 67; App. 127. Plaintiff cannot spin this disclosure—with which he apparently agrees—into securities fraud. It is well-settled that "[d]isclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (cleaned up). "[A] government investigation, without more, does not trigger a generalized duty to disclose," nor do federal securities laws "require a company to accuse itself of wrongdoing." *In re XP Inc. Sec. Litig.*, 2021 WL 861917, at *9 (E.D.N.Y. Mar. 8, 2021) (citation omitted).

Accordingly, courts frequently dismiss securities claims based on disclosures similar to Range's, where a company discloses that it is subject to a number of ongoing proceedings without providing further detail about specific proceedings—even when those proceedings ultimately

result in fines, lawsuits, or enforcement actions. *See, e.g.*, *In re XP*, 2021 WL 861917, at *10 (dismissing where company stated "[w]e are, and may be in the future, party to legal, arbitration and administrative investigations, inspections and proceedings arising in the ordinary course of our business. . . ."); *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15–16 (S.D.N.Y. 2016) (dismissing where company disclosed that "[f]rom time to time, the Company is involved in certain claims and legal proceedings arising in the normal course of business," and "the Company does not believe, based on current knowledge, that the outcome of any currently pending claims or legal proceedings in which the Company is currently involved will have a material adverse effect on the Company's financial statements.").

Nor can Plaintiff possibly suggest that the DEP investigation, or the ultimate settlement, should have been disclosed in more detail because it was "material." The settlement concerned only a tiny percentage of Range's wells—the 42 wells at issue comprised only *0.93%* of Range's wells in the Appalachian Basin as of 2016, and *0.8%* of Range's wells overall.[7] In addition, the $294,000 civil penalty ultimately imposed is obviously immaterial in the context of Range's business, which is many orders of magnitude larger. To apply the five percent guideline for materiality, courts often look to a business's total assets or revenue. *In re XP*, 2021 WL 861917, at *7 ($11 million increase in liability immaterial in context of assets and revenue); *In re Lions Gate*, 165 F. Supp. 3d at 13 ($7.5 million civil penalty immaterial in context of revenue); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 443 (S.D.N.Y. 2009) (arbitration seeking $1.25 million immaterial in context of total assets). As of December 31, 2019, Range's assets were valued at over $6.6 billion, and it had $2.8 billion in total revenues and other income. App. 267,

[7] Even after Range divested several of its properties and operations by the end of 2019, the 42 wells at issue still only comprised 3.3% of Range's 1,272 net producing wells. AC ¶ 2.

268. In the context of these numbers, no reasonable investor would view a potential or actual $294,000 fine as altering the "total mix of information made available" regarding Range's financial status. *In re XP*, 2021 WL 861917, at *7.

Moreover, Range's belief in the potential for future liability—like its belief regarding its substantial compliance—is a statement of opinion, not fact. By explaining that, "[w]hile many of these matters involve inherent uncertainty, we *believe* that the amount of the liability" would not have "a material adverse effect," Range plainly cautioned investors that the potential effect of future liability was a subjective opinion. App. 127 (emphasis added). And here again, Plaintiff has failed to plead the actionability of this opinion under any of the three prongs of *Omnicare*. Under the first prong, he has not alleged that Range subjectively disbelieved its opinion. Indeed, he alleges *nothing* about any Defendant's state of mind regarding the DEP investigation or the company's potential liability. Under the second prong, he has not alleged any false statement of "embedded fact." And under the third prong, he has not alleged anything about how Range formed its opinion as to the potential effect of the DEP investigation. *Omnicare*, 575 U.S. at 190.

Adjacent to its legal disclosure, Range also disclosed a specific ongoing matter, indicating that the DEP notified Range that "it intend[ed] to assess" a civil penalty against the company related to a well in Lycoming County, and providing additional information on the status of that particular proceeding. AC ¶ 68. Plaintiff argues that because Range disclosed *one* specific regulatory proceeding, Range was required to disclose *every* regulatory proceeding. But the mere fact that Range disclosed a different DEP investigation during this period makes no difference, nor does it render Range's general disclosures misleading. Importantly, although Plaintiff repeatedly and falsely asserts that Range called this proceeding "*the only environmental proceeding*" that could "result in monetary sanctions of more than $100,000,'" AC ¶¶ 68, 73, 76, 82, 85, 86, 88, 94,

97, 99, 101 (emphasis added), Range's disclosures say no such thing.[8] The Court must "focus on the statements themselves, not plaintiff's recasting of them." *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 572 (S.D.N.Y. 2018), *aff'd*, 771 F. App'x 51 (2d Cir. 2019). No reasonable investor could have concluded, based upon Range's disclosure of the Lycoming County matter and the surrounding disclosures, that Range was not subject to any other regulatory proceedings. Indeed, Range's disclosure refutes this by specifically warning investors that the company was subject to "a number of pending or threatened legal actions." App. 127.

### C. Range's Opinions Regarding AROs Are Not Actionable.

Plaintiff's dispute with Range's AROs is not clear even from the Amended Complaint. Far from pleading with "particularity" why Range's AROs were fraudulent (or even incorrect), Plaintiff relies only on his boilerplate, copy-pasted paragraph suggesting that Range's accounting was false or misleading simply because DEP concluded that Range miscategorized 42 wells, and those wells needed to be plugged. But Plaintiff pleads no factually supported statements raising even a plausible—much less a particularized—inference that Range's AROs were incorrect.

AROs are accounting line-items that reflect Range's accountants' estimate of future costs associated with retiring assets: namely, "the estimated present value of the amounts we will incur to plug, abandon and remediate our producing properties at the end of their productive lives." AC ¶ 42. Each of Range's annual and quarterly securities filings identified the company's long-term estimate for the relevant time period, which fluctuate as a matter of course by tens of millions of dollars each year. Thus, Range estimated AROs of $250 million for 2016, $270 million for 2017, $307 million for 2018, and $248 million for 2019. AC ¶¶ 49, 62, 78, 90. Each filing also

---

[8] To the contrary, Range extensively disclosed the risks attendant to working in a highly regulated industry, including the fact that it is routinely subject to investigations and litigation, and that it might be subject to future enforcement. *See supra*, pp. 7–8, 10.

reported that period's expenses for the "abandonment and impairment of unproved properties," a separate accounting litem, which varied over time. *E.g.*, AC ¶¶ 52, 65, 81, 93. Range's financial statements were independently audited by Ernst & Young, LLP. App. 061.

Against this backdrop, Plaintiff offers *nothing* to explain why or how Range's AROs were incorrect. Indeed, beyond Plaintiff's conclusory assertion that the misclassification of wells "artificially decreased" Range's reported "cost estimates," AC ¶ 44, Plaintiff does not allege *anything* about Range's accounting. Plaintiff identifies no basis to contend Range's accounting was in error, much less that it was knowingly fraudulent. There was no restatement of Range's financials after the DEP settlement. Nor does Plaintiff offer any allegation identifying or quantifying any differential in operational costs of the DEP settlement, linking the costs of plugging the wells at issue to the AROs, or suggesting that Range estimated its AROs incorrectly at any time. There is no allegation that the costs associated with the 42 wells somehow impacted Range's AROs, nor that any cost rendered Range's AROs materially inaccurate. Plaintiff's passing mentions of Range's abandonment and impairment costs over time are similarly sparse: Plaintiff offers nothing to explain how those costs relate to his allegations, when or how those costs should have changed and—as a result—provides no explanation as to how they were false or misleading. Under the PSLRA and Rule 9(b), a plaintiff must do more than "cite[] particular statements from . . . financial reports, and allege[] variously that they were 'materially false and misleading as such amounts were improperly inflated,' were 'made without a reasonable basis,' and were 'inaccurate' due to the fraudulent accounting procedures." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 522 (5th Cir. 1993) (affirming dismissal). Plaintiff "make[s] no attempt to estimate by how much the earnings were inflated," and provides "no standard of comparison to what the

correct numbers would have been." *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp. Inc.*, 537 F.3d 527, 536 (5th Cir. 2008) (ordering dismissal).

Range also clearly explained that its ARO assessment required that it "make estimates and judgments," and "[i]nherent in the fair value calculation are numerous assumptions and judgments including the ultimate retirement costs, inflation factors, credit-adjusted discount rates, timing of retirement, and changes in the legal, regulatory, environmental and political environments." App. 060. Range's estimates—like other subjective accounting measures based on estimates of value—are statements of opinion actionable only under the circumstances described in *Omnicare*. *Cf., e.g.*, *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 403 (S.D.N.Y. 2020) (warranty reserves); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017) (goodwill); *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017) (loan loss reserves), *aff'd*, 905 F.3d 106 (3d Cir. 2018). Once again, Plaintiff fails to plead any of *Omnicare*'s three prongs. First, Plaintiff has not alleged facts that Range subjectively disbelieved its accounting for AROs. Second, Plaintiff alleges no "embedded facts" within Range's ARO calculation that were objectively false. Third, Plaintiff alleges no misleading omissions about how the ARO opinion was formed.

### D. Range's Code of Ethics and Corporate Values Are Not Actionable.

Range's annual securities filings refer to the "Code of Ethics" on Range's website, which explains that Range's "policy" is to conduct business in accordance with the law, "and in a manner that will always reflect a high standard of ethics." AC ¶ 38.[9] The code describes Range's aspiration to meet a high standard of integrity, including "being a steward of the environment in

[9] Range's filings also tell investors that "[i]nformation contained on or connected to our website is not incorporated by reference into this Form 10-K and should not be considered part of this report of any other filing we make with the SEC." App. 035.

all areas in which we operate," and its "expect[ation]" that all employees will comply with the law. AC ¶ 38. Range's separate webpage on "Our Vision and Values" contains similar statements, explaining that the values of performance, innovation, integrity, and transparency "guide us in the work we do." AC ¶ 40.

Plaintiff alleges Range's general code of ethics and statement of "values" are actionably fraudulent. As an initial matter, none of these statements is false or misleading, and Plaintiff has pleaded no facts to the contrary. But in any event, it is well-settled that "defendants' generalized statements about . . . transparency, quality, and responsibility are the sort of puffery that a reasonable investor would not rely on." *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 901–02 (5th Cir. 2018) (affirming dismissal of securities claims based on code of ethics). "[C]ourts have recognized that statements in such documents are immaterial puffery." *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 861 (S.D. Tex. 2016) (rejecting reliance on ethics and compliance code). Thus, in *Plains*, despite felony indictments and a cleanup cost of almost *900 times* the amount of the civil fine here, the court dismissed claims premised on the company's "commitment to safe operations" and "company-wide commitment to compliance with environmental laws and regulations." *Plains*, 307 F. Supp. 3d at 626. The same is warranted here.

**E. Range's SOX Certifications Are Not Actionable.**

Each of Range's SEC filings also contained SOX certifications from Range's President and CEO (Jeffrey Ventura), and Range's then-CFO (Roger Manny or Mark Scucchi). Each SOX certification stated that, "to [the signor's] knowledge," the information in the filing fairly presents Range's financial condition and operations, and that Range had internal controls to ensure material information would be reported. App. 066, 067. Although Plaintiff asserts that these certifications were purportedly false, "the general assertion that . . . SOX Certifications falsely affirmed that [a company's] public filings were accurate is insufficient to allege a claim for securities fraud under

Rules 12(b)(6), 9(b), and the PSLRA." *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 273 F. Supp. 3d 650, 684 (N.D. Tex. 2017) (cleaned up). Here, Plaintiff has not identified any accounting errors, has not suggested that Range did not have internal controls, nor that those controls did not provide reasonable assurance that its financial reporting complied with GAAP. Because "Plaintiff[] allege[s] nothing that is false or misleading about the content of the certifications themselves," he "therefore ha[s] not alleged an actionable claim." *In re KBR, Inc. Sec. Litig.*, 2018 WL 4208681, at *8 (S.D. Tex. Aug. 31, 2018).

## II. PLAINTIFF FAILS TO PLEAD ANY PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.

"Plaintiffs properly plead scienter when they allege that a company knowingly or recklessly made statements to the market while aware of facts that, if not disclosed, would render those statements misleading." *Six Flags*, 2021 WL 807251, at *23. "Allegations of 'simple or even inexcusable negligence' are insufficient; instead, Plaintiffs must adequately plead 'highly unreasonable' conduct representing 'an extreme departure from the standards of ordinary care.'" *Id.* (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003)). "[F]or each act or omission alleged to be false or misleading, plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." *Six Flags*, 2021 WL 807251, at *15 (quoting *Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017)). To qualify as "strong" under the PSLRA, "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

Nothing in Plaintiff's Amended Complaint comes close to properly pleading scienter for Range or the Individual Defendants. Notable is what Plaintiff *does not* allege: which defendant was aware that any alleged misstatement was false, how they would have learned of the falsity, or

any specifics about their knowledge. Indeed, Plaintiff alleges *literally nothing* about three of the four Individual Defendants, making no scienter allegations about Scucchi, Manny, and Ginn. But "the PSLRA requires the plaintiffs to distinguish among those they sue and enlighten *each defendant* as to his or her particular part in the alleged fraud." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (internal quotation marks omitted).

Plaintiff bases his allegations on five Confidential Witnesses ("CWs"), but, as an initial matter, the Court "must discount allegations" from Plaintiff's confidential sources. *Six Flags*, 2021 WL 807251, at *15 (citation omitted). "At the very least," Plaintiff must allege "particular job descriptions" and "individual responsibilities." *Id.* Plaintiff has failed to do so here. More fundamentally, none of the CW allegations concern any of the specific statements at issue, the DEP investigation, the particular 42 wells at issue, or Range's accounting. Instead, their general assertions are unmoored from any particular events relevant to Plaintiff's cursory theory of fraud. But even setting that fundamental barrier aside and crediting Plaintiff's CW allegations on their own terms, the most plausible inference is Defendants believed the company was in substantial compliance with all relevant regulatory requirements notwithstanding the DEP's conclusion.

Plaintiff's attempted scienter allegations are confined to two paragraphs of the Amended Complaint. *See* AC ¶¶ 31, 37. Paragraph 31 alleges that Range had an "incentive" to classify wells as inactive, "wait[ed] to classify" unspecified wells as abandoned at unspecified times, or purportedly "classified wells in a way that made it look like they had more producing wells then they did." *Id*. But those allegations are unrelated to any specific time period, wells, or individuals. Plaintiff does not allege that Range, or the Individual Defendants, actually held—let alone acted upon—these supposed general "incentives," or misclassifications to which Plaintiff alludes. Nor does Plaintiff connect these vague allegations to any of the 42 wells at issue in the DEP

investigation. Plaintiff's allegations amount to nothing more than a bare assertion that Range had a profit motive to classify wells as "inactive." But "[a] generalized motive which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter." *Mortensen v. AmeriCredit Corp.*, 123 F. Supp. 2d 1018, 1023 (N.D. Tex.) (internal quotation marks omitted), *aff'd*, 240 F.3d 1073 (5th Cir. 2000). And even accepting the allegation that Range misjudged how it should have classified certain wells, "poor business judgment—even if attributable to monetary incentives—does not establish an inference of recklessness that is cogent and compelling." *Owens v. Jastrow*, 789 F.3d 529, 544–45 (5th Cir. 2015).

The scienter allegations in paragraph 37 are no more compelling. First, Plaintiff alleges that CEO Ventura received reports regarding well production and "well field levels," and "was heavily involved in the operations in PA." AC ¶ 37. But "[i]nternal corporate reports can support a strong inference of scienter only when they meet two requirements: (1) the complaint has corroborating details of the reports' contents, authors, and recipients; and (2) the reports are connected to the speaking executive in a persuasive way." *Pier 1 Imports, Inc.*, 935 F.3d at 434. Here, as in *Pier 1*, "the first element is not satisfied in this case because the investors do not allege that any of these reports revealed the information that is relevant here"—namely, the *misclassification* of a particular subset of Range's wells, as opposed to merely the day-to-day facts regarding well production. *Id.* Nor does Plaintiff allege "when the reports were created, when they were presented to Defendants, or whether Defendants actually saw the reports." *Six Flags*, 2021 WL 807251, at *25 (rejecting reliance on company reports). In sum, "allegations of unnamed documents or regular reports that Individual Defendants received by virtue of their positions will not suffice" to allege scienter. *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d at 867. Similarly, the vague allegation that Mr. Ventura was "heavily involved" in operations—with no allegation of what he was involved in, much less why it would make the alleged fraud apparent—is

too general to adequately allege scienter. *See Shaw Grp.*, 537 F.3d at 535 (plaintiff cannot plead scienter by inferring a defendant was aware of wrongdoing based on his position at the company).

Paragraph 37 also purports to identify a "history of violations" by identifying a *single* past regulatory proceeding against Range and asserting that one CW "corroborated the Company's history of yearly DEP and government investigations." AC ¶ 37. This alleges nothing whatsoever about any individual's knowledge of the allegations in *this* case, the 42 wells at issue, the status or substance of DEP investigation more broadly, or the falsity of any statements in Range's disclosures. Indeed, if anything, Plaintiff's allegation here reinforces the contrary inference that Range believed in good faith that it was complying with all regulatory requirements.

## III. PLAINTIFF FAILS TO PLEAD CLAIMS UNDER SECTION 20(A).

"To impute liability to [the Individual Defendants]—the alleged 'control persons' of [Range] under § 20(a) of the Exchange Act—the investors have to show a 'primary violation' under § 10(b): If the § 10(b) claim is inadequate, then so is the § 20(a) claim." *Six Flags*, 2021 WL 807251, at *16 (citation omitted). As established above, because Plaintiff fails to allege any actionable misstatements, and separately fails to allege scienter, he fails to allege any violations of section 10(b). His section 20(a) claims therefore also fail.

## CONCLUSION

Plaintiff cannot manufacture a sweeping securities-fraud class action out of the DEP's routine regulatory inquiry and its resulting $294,000 civil fine. Range warned investors that mistakes, regulatory enforcements, and fines were possible. For good reason, federal securities law demands more than Plaintiff's post hoc and summary allegations of fraud. Range's statements regarding its legal compliance were true, and no reasonable investor could have been misled. Moreover, Plaintiff offers no basis to second-guess Range's opinion that it had substantially complied with all relevant laws. Range's statements regarding ongoing legal matters were

similarly true, and could not have misled investors. Plaintiff does not—and cannot—allege that the small regulatory penalty here was material to Range's business, nor can Plaintiff show that Range's subjective assessment of its potential liability was incorrect. Plaintiff fails entirely to state a theory of falsity with respect to Range's accounting estimates. Range's aspirational Code of Ethics and Corporate Values cannot support a securities fraud claim under well-settled law, nor can its executives' SOX certifications. And Plaintiff wholly fails to present any cognizable theory of scienter, much less raise the "strong inference" required by statute.

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: August 25, 2021

Respectfully submitted,

**WICK PHILLIPS GOULD & MARTIN, LLP**

*/s/ David J. Drez III*
David J. Drez III (State Bar No. 24007127)
Ian Brinton Hatch (State Bar No. 24123444)
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789
david.drez@wickphillips.com
ian.hatch@wickphillips.com

- and -

**WILLIAMS & CONNOLLY LLP**
Amanda M. MacDonald (*admitted pro hac vice*)
Michael J. Mestitz (*admitted pro hac vice*)
725 Twelfth Street N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
amacdonald@wc.com
mmestitz@wc.com

*Attorneys for Defendants*
*Range Resources Corporation, Jeffrey L. Ventura, Mark S. Scucchi, Roger S. Manny, and Dori A. Ginn*

**CERTIFICATE OF SERVICE**

On August 25, 2021, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ David J. Drez III*
David J. Drez III

**CHART OF ALLEGED FALSE OR MISLEADING STATEMENTS**

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 38 | Range Website | N/A | "It is the policy of Range that we will conduct business in accordance with all applicable federal, state and local laws and regulations, as well as applicable laws and regulations of foreign jurisdictions, and in a manner that will always reflect a high standard of ethics. The laws and regulations applicable to Range are far reaching and complex. Compliance with the law does not comprise our entire ethical responsibility; rather, it is a minimum, essential condition for performance of our duties." | Code of Ethics/ Values | Not false or misleading (I.D); Puffery (I.D); No scienter (II) |
| 38 | Range Website | N/A | "As set forth in the previous section, it is the policy of Range to conduct business in compliance with all applicable laws and regulations, including but not limited to, those relating to environmental protection and regulatory requirements. In addition to compliance with these requirements, Range is committed to being a steward of the environment in all areas in which we operate. All Range employees, regardless of their role, are expected to perform their assigned duties within the scope of the law and in compliance with environmental laws and regulations." | Code of Ethics/ Values | Not false or misleading (I.D); Puffery (I.D); No scienter (II) |
| 40 | Range Website | N/A | Our "core values—performance, innovation integrity and transparency—guide us in the work we do every day as a natural gas industry leader. These values reflect how we operate as a company and are deeply rooted in our commitment to improving the communities where we work." | Code of Ethics/ Values | Not false or misleading (I.D); Puffery (I.D); No scienter (II) |

[10] Defendants include the statements here as alleged in the Amended Complaint, but do not waive any challenge to Plaintiff's framing or conclusions regarding the substance of Range's statements. Indeed, Plaintiff's framing of the statements or its characterization of Range's comments is affirmatively misleading in several respects. *See supra* pp. 7–8, 15 (discussing Plaintiff's omission of relevant qualifying language), pp. 12–13 (discussing Plaintiff's inaccurate characterization of disclosures regarding another DEP investigation).

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 40 | Range Website | N/A | "Our performance is driven by the company's commitment to act with integrity in everything we do, from principled business decision-making to community partnerships. We are deeply connected to the communities we serve and work every day to operate in a manner that meets or exceeds the expectations of our stakeholders." | Code of Ethics/ Values | Not false or misleading (I.D); Puffery (I.D); No scienter (II) |
| 40 | Range Website | N/A | "Transparency and accountability to our shareholders, while supporting greater employee, community and partner confidence and engagement, is at the core of our culture. We actively work to ensure Range stakeholders have insight into our operations, as well as our contributions to the economy, the environment and the communities where we operate. We solicit actionable input and implement recommendations from community partners and always seek opportunities to further improve." | Code of Ethics/ Values | Not false or misleading (I.D); Puffery (I.D); No scienter (II) |
| 42 | 10-Q 1Q2016 | App. 004 | "Our asset retirement obligations primarily represent the estimated present value of the amounts we will incur to plug, abandon and remediate our producing properties at the end of their productive lives. Significant inputs used in determining such obligations include estimates of plugging and abandonment costs, estimated future inflation rates and well lives. The inputs are calculated based on historical data as well as current estimated costs." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 42 | 10-Q 1Q2016 | App. 004, 007 | For the quarter, the Company reported that its long-term AROs for the three months ended March 31, 2016 amounted to $248.694 million. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $10.6 million. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 43 | 10-Q 1Q2016 | App. 009, 010 | Appended as exhibits to the Form 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Ventura and Manny certified that "[t]he [Form 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [Form 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company." They further certified that they had "designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared." | SOX | Not false or misleading (I.E); No scienter (II) |
| 45 | 10-Q 2Q2016 | App. 014, 018 | The 2Q16 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $250,547 for the six months ended June 30, 2016. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $7.1 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 45 | 10-Q 2Q2016 | App. 020, 021 | Attached to the 2Q16 were SOX certifications signed by Defendants Ventura and Manny substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 47 | 10-Q 3Q2016 | App. 025, 028 | The 3Q16 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $269,668 for the nine months ended September 30, 2016. The Company further reported that its expenses for "abandonment and impairment | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| | | | of unproved properties" was $6.1 million for the quarter. | | |
| 47 | 10-Q 3Q2016 | App. 030, 031 | Attached to the 3Q16 were SOX certifications signed by Defendants Ventura and Manny substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 49 | 2016 10-K | App. 059, 064 | The 2016 10-K, signed by Defendants Ventura, Manny, and Ginn contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $250.672 million as of the period covered by the 2016 10-K. Defendants made clear that AROs "are recognized in the period they are incurred." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 50 | 2016 10-K | App. 060 | Defendants acknowledged in the 2016 10-K that, "We have significant obligations to remove tangible equipment and restore the surface at the end of natural gas and oil production operations. Removal and restoration obligations are primarily associated with plugging and abandoning wells." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 51 | 2016 10-K | App. 060 | The 2016 10-K also stated that, "[d]uring 2016, we decreased our existing ARO by $26.8 million or approximately 10% of the ARO balance at December 31, 2015," which "was primarily due [to] a decrease in our estimated costs to plug and abandon certain wells in Pennsylvania." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 52 | 2016 10-K | App. 059 | Defendants further reported that its expenses for "abandonment and impairment of unproved properties" was $30.1 million for the year. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 53 | 2016 10-K | App. 039 | Additionally, Defendants represented, in relevant part, "[w]e believe we are in substantial compliance with currently applicable laws and regulations," including, inter alia, "environmental laws and regulations," including regulations relating to the "plugging and abandoning of wells," and "the continued substantial compliance with existing requirements will not have a material adverse effect on our financial position, cash flows or results of operations." | Opinion on substantial compliance | Not false or misleading (I.A); Opinion (I.A); No scienter (II) |
| 54 | 2016 10-K | App. 066, 067 | Appended as exhibits to the 2016 10-K were substantively the same SOX certifications as referenced in ¶ 43, *supra*, signed by Defendants Ventura and Manny. | SOX | Not false or misleading (I.E); No scienter (II) |
| 56 | 10-Q 1Q2017 | App. 071–72, 075 | The 1Q17, signed by Defendants Manny and Ginn, contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $251.368 million for the three months ended March 31, 2017. The Company further stated that expenses for "abandonment and impairment of unproved properties" for the quarter were $4.4 million. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 56 | 10-Q 1Q2017 | App. 077, 078 | Attached to the 1Q17 were SOX certifications signed by Defendants Ventura and Manny substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 58 | 10-Q 2Q2017 | App. 082, 085–86 | The 2Q17 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $256,322 for the six months ended June 30, 2017. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $5.2 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 58 | 10-Q 2Q2017 | App. 088, 089 | Attached to the 2Q17 were SOX certifications signed by Defendants Ventura | SOX | Not false or misleading (I.E); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| | | | and Manny substantively identical to those referenced in ¶ 43. | | |
| 60 | 10-Q 3Q2017 | App. 093, 096 | The 3Q17 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $259,601 for the nine months ended September 30, 2017. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $42.6 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 60 | 10-Q 3Q2017 | App. 098, 099 | Attached to the 3Q17 were SOX certifications signed by Defendants Ventura and Manny substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 62 | 2017 10-K | App. 131 | The 2017 10-K, signed by Defendants Ventura, Manny and Ginn, contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $270.528 million for 2017. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 63 | 2017 10-K | App. 129 | The 2017 10-K also stated that, "[d]uring 2017, we increased our existing ARO by $12.5 million or approximately 5% of the ARO balance at December 31, 2016," which "was primarily due to an increase in our estimated costs to plug and abandon certain wells in North Louisiana and Pennsylvania." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 64 | 2017 10-K | App. 129 | Defendants once again acknowledged in the 2017 10-K that, "We have significant obligations to remove tangible equipment and restore the surface at the end of natural gas and oil production operations. Removal and restoration obligations are primarily associated with plugging and abandoning wells." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 64 | 2017 10-K | App. 141 | Defendants further reported that its expenses for "abandonment and impairment of unproved properties" was $269.7 million for the year. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 66 | 2017 10-K | App. 104 | Additionally, the 2017 10-K contained the same statements referenced in ¶ 53, *supra*, regarding Range Resources' purported substantial compliance with applicable laws and regulations, and how such compliance would not have a material adverse effect on the Company's financial position, cash flows, or results of operations. | Opinion on substantial compliance | Not false or misleading (I.A); Opinion (I.A); No scienter (II) |
| 67 | 2017 10-K | App. 127 | "We are the subject of, or party to, a number of pending or threatened legal actions and claims arising in the ordinary course of our business. While many of these matters involve inherent uncertainty, we believe that the amount of the liability, if any, ultimately incurred with respect to proceedings or claims will not have a material adverse effect on our consolidated financial position as a whole or on our liquidity, capital resources or future annual results of operations. We will continue to evaluate our litigation quarterly and will establish and adjust any litigation reserves as appropriate to reflect our assessment of the then-current status of litigation." | Ongoing matters | Not false or misleading (I.C.1); Opinion (I.C.2); Not material (II); No scienter (III) |
| 68 | 2017 10-K | App. 127 | Defendants also purported to disclose the only environmental proceeding that could "result in monetary sanctions of more than $100,000":<br>"Our subsidiary, Range Resources – Appalachia, LLC, was notified by the Pennsylvania Department of Environmental Protection ("DEP"), in second quarter 2015, that it intends to assess a civil penalty under the Clean Streams Law and the 2012 Oil and Gas Act in connection with one well in Lycoming County. The DEP has directed us to prevent methane and other substances from escaping from this gas well into groundwater and a stream. We have considerable evidence that this well is not leaking and pre-drill testing of surrounding water wells showed the presence of methane in the water before commencement of our operations. While we intend to vigorously | Ongoing matters | Not false or misleading (I.C.1); Opinion (I.C.2); Not material (II); No scienter (III) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| | | | assert this position with the DEP, resolution of this matter may nonetheless result in monetary sanctions of more than $100,000." | | |
| 69 | 2017 10-K | App. 133, 134 | Appended as exhibits to the 2017 10-K were substantively the same SOX certifications as referenced in ¶ 43, *supra*, signed by Defendants Ventura and Manny. | SOX | Not false or misleading (I.E); No scienter (II) |
| 71 | 10-Q 1Q2018 | App. 138, 141 | The 1Q2018 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $279,009 for the three months ended March 31, 2018. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $11.8 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 71 | 10-Q 1Q2018 | App. 143, 144 | Attached to the 1Q2018 were SOX certifications signed by Defendants Ventura and Manny substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 73 | 10-Q 2Q2018 | App. 148, 151 | The 2Q18, signed by Defendants Scucchi and Ginn, contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $296,219 million for the six months ended June 30, 2018. The Company further stated that expenses for "abandonment and impairment of unproved properties" for the same period were $66.7 million. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 73 | 10-Q 2Q2018 | App. 152 | Defendants also purported to disclose the only environmental proceeding that could "result in monetary sanctions of more than $100,000": "Our subsidiary, Range Resources – Appalachia, LLC, was notified by the Pennsylvania Department of Environmental Protection ("DEP"), in second quarter 2015, that it intends to assess a civil penalty under the Clean Streams Law and the 2012 Oil and Gas Act in connection with one well in Lycoming County. The DEP has directed us to prevent methane and other substances from escaping from this gas well into groundwater and a stream. We have considerable evidence that this well is not leaking and pre-drill testing of surrounding water wells showed the presence of methane in the water before commencement of our operations. While we intend to vigorously assert this position with the DEP, resolution of this matter may nonetheless result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.A); Opinion (I.A); No scienter (II) |
| 74 | 10-Q 2Q2018 | App. 153, 154 | Attached to the 2Q18 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 76 | 10-Q 3Q2018 | App. 158, 161 | The 3Q2018 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $290,645 for the nine months ended September 30, 2018. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $6.5 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 76 | 10-Q 3Q2018 | App. 162 | The 3Q18 also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 76 | 10-Q 3Q2018 | App. 163, 164 | Attached to the 3Q2018 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 78 | 2018 10-K | App. 199 | The 2018 10-K, signed by Defendants Ventura, Scucchi and Ginn, contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $307.269 million as of the period covered by the 2018 10-K. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 79 | 2018 10-K | App. 196 | The 2018 10-K also stated that, "[d]uring 2018, we increased our existing ARO by $12.0 million or approximately 4% of the ARO balance at December 31, 2017," which "was primarily due to an increase in our estimated costs to plug and abandon wells in Pennsylvania." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 80 | 2018 10-K | App. 196 | Defendants once again acknowledged in the 2018 10-K that, "We have significant obligations to remove tangible equipment and restore the surface at the end of natural gas and oil production operations. Removal and restoration obligations are primarily associated with plugging and abandoning wells." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 81 | 2018 10-K | App. 195 | Defendants further reported that its expenses for "abandonment and impairment of unproved properties" was $515.0 million for the year. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 82 | 2018 10-K | App. 169 | Additionally, the 2018 10-K contained the same statements referenced in ¶¶ 53 and 67, *supra*, regarding Range Resources' purported substantial compliance with applicable laws and regulations, and how such compliance would not have a material adverse effect on the Company's financial position, cash flows, or results of operations . . . . | Opinion on substantial compliance | Not false or misleading (I.A); Opinion (I.A); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 82 | 2018 10-K | App. 194 | . . . . and Range Resources' legal proceedings, which failed to apprise investors of what, if any, investigation was underway regarding the designated status of the Company's wells in Pennsylvania, including potentially related fines or communications from the DEP. The 2018 10-K also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 83 | 2018 10-K | App. 201, 202 | Appended as exhibits to the 2018 10-K were substantively the same SOX certifications as referenced in ¶ 43, *supra*, signed by Defendants Ventura and Scucchi. | SOX | Not false or misleading (I.E); No scienter (II) |
| 85 | 10-Q 1Q2019 | App. 206, 209 | The 1Q2019 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $312,122 for the three months ended March 31, 2019. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $12.7 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 85 | 10-Q 1Q2019 | App. 210 | The 1Q2019 also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 85 | 10-Q 1Q2019 | App. 211, 212 | Attached to the 1Q2019 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 86 | 10-Q 2Q2019 | App. 216–17, 220 | The 2Q2019 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $315,500 for the six months ended June 30, 2019. The Company further reported that its expenses for "abandonment and | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| | | | impairment of unproved properties" was $12.8 million for the quarter. | | |
| 86 | 10-Q 2Q2019 | App. 221 | The 2Q2019 also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 86 | 10-Q 2Q2019 | App. 222, 223 | Attached to the 2Q2019 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 88 | 10-Q 3Q2019 | App. 227, 230 | The 3Q2019 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $235,265 for the nine months ended September 30, 2019. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $16.2 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 88 | 10-Q 3Q2019 | App. 231 | The 3Q2019 also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 88 | 10-Q 3Q2019 | App. 232, 233 | Attached to the 3Q2019 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 90 | 2019 10-K | App. 270 | The 2019 10-K, signed by Defendants Ventura, Scucchi, and Ginn, contained substantively the same statements as referenced in ¶ 22, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $248.683 million as of the period covered by the 2019 10-K. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 91 | 2019 10-K | App. 264 | The 2019 10-K also stated that, "[d]uring 2019, we increased our existing ARO by $7.1 million or approximately 2% of the ARO balance at December 31, 2018 primarily related to increases in our estimated costs to plug and abandon wells in North Louisiana." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 92 | 2019 10-K | App. 264 | Defendants once again acknowledged in the 2019 10-K that, "We have significant obligations to remove tangible equipment and restore the surface at the end of natural gas and oil production operations. Removal and restoration obligations are primarily associated with plugging and abandoning wells." | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 93 | 2019 10-K | App. 263 | Defendants further reported that its expenses for "abandonment and impairment of unproved properties" was $1.2 billion for the year. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 94 | 2019 10-K | App. 238 | Additionally, the 2019 10-K contained the same statements referenced in ¶¶ 53 and 67, *supra*, regarding Range Resources' purported substantial compliance with applicable laws and regulations, and how such compliance would not have a material adverse effect on the Company's financial position, cash flows, or results of operations; . . . | Opinion on substantial compliance | Not false or misleading (I.A); Opinion (I.A); No scienter (II) |
| 94 | 2019 10-K | App. 262 | . . . and Range Resources' legal proceedings, which failed to apprise investors of what, if any, investigation was underway regarding the designated status of the Company's wells in Pennsylvania, including potentially related fines or communications from the DEP. The 2019 10-K also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 95 | 2019 10-K | App. 272, 273 | Appended as exhibits to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 23, *supra*, signed by Defendants Ventura and Scucchi. | SOX | Not false or misleading (I.E); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 97 | 10-Q 1Q2020 | App. 277, 280 | The 1Q20 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $125,887 for the three months ended March 31, 2020. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $5.4 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 97 | 10-Q 1Q2020 | App. 282 | The 1Q20 also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 97 | 10-Q 1Q2020 | App. 283, 284 | Attached to the 1Q20 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |
| 99 | 10-Q 2Q2020 | App. 288, 291 | The 2Q20 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $129,976 for the six months ended June 30, 2020. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $5.5 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 99 | 10-Q 2Q2020 | App. 292 | The 2Q20 also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 99 | 10-Q 2Q2020 | App. 293, 294 | Attached to the 2Q20 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |

| AC ¶ | Source | App. Cite | Statement as Alleged in AC[10] | Category | Inactionable |
|---|---|---|---|---|---|
| 101 | 10-Q 3Q2020 | App. 298, 302 | The 3Q20 contained substantively the same statements as referenced in ¶ 42, *supra*, regarding how the Company accounted for its AROs, and reported that the Company's long-term AROs amounted to $79,951 for the nine months ended September 30, 2020. The Company further reported that its expenses for "abandonment and impairment of unproved properties" was $5.7 million for the quarter. | AROs | Not false or misleading (I.C); Opinion (I.C); No scienter (II) |
| 101 | 10-Q 3Q2020 | App. 303 | The 3Q20 also repeated the same representations set forth in ¶ 73 regarding the Company's purportedly only environmental proceeding that could "result in monetary sanctions of more than $100,000." | Ongoing matters | Not false or misleading (I.B); Opinion (I.B); No scienter (II) |
| 101 | 10-Q 3Q2020 | App. 304, 305 | Attached to the 3Q20 were SOX certifications signed by Defendants Ventura and Scucchi substantively identical to those referenced in ¶ 43. | SOX | Not false or misleading (I.E); No scienter (II) |