UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HOWARD JACOBOWITZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RANGE RESOURCES CORPORATION, JEFFREY L. VENTURA, MARK S. SCUCCHI, ROGER S. MANNY, and DORI A. GINN <br><br> Defendants. | Case No. No. 4:21-cv-00751-P |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     STATEMENT OF FACTS .................................................................... 2

III.    ARGUMENT ............................................................................ 8

        A.      STANDARD OF REVIEW .......................................................... 8

        B.      PLAINTIFF ADEQUATELY ALLEGES EXCHANGE ACT VIOLATIONS .... 9

                1.      THE COMPLAINT ADEQUATELY ALLEGES FALSITY ................... 9

                        a)      Defendants' Statements Regarding Their Costs to Abandon and
                                Plug Wells are Actionable .......................................... 10

                        b)      Defendants' Statements Regarding Compliance With Regulations
                                and the Code, and their "Integrity" and "Transparency" are
                                Actionable ...................................................... 12

                        c)      Defendants' Statements Regarding Environmental Proceedings
                                are Actionable .................................................. 16

                        d)      Defendants' Admissions Establish Falsity................................... 18

                2.      THE COMPLAINT ADEQUATELY ALLEGES SCIENTER .............. 19

                        a)      Defendants' Access to Information Supports an Inference of
                                Scienter ........................................................ 20

                        b)      Defendants' Admissions Support an Inference of Scienter ......... 21

                        c)      The DEP Investigation, Findings, and the Shirocky Memo
                                Support an Inference of Scienter.................................... 21

                        d)      The CW Allegations Support an Inference of Scienter ............... 22

                        e)      The SOX Certifications Support an Inference of Scienter........... 23

                        f)      Defendants' Motive Supports an Inference of Scienter............... 24

IV.     CONCLUSION.......................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................8

*Bach v. Amedisys, Inc.*,
No. 10-00395-BAJ-RLB, 2016 U.S. Dist. LEXIS 111077 (M.D. La. Aug. 19,
2016) ...............................................................................................................13, 14, 16

*Barrie v. Intervoice-Brite, Inc.*,
397 F.3d 249 (5th Cir. 2005), opinion modified on denial of reh'g, 409 F.3d
653 (5th Cir. 2005)..............................................................................................9, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................8

*Berger v. Compaq Comput. Corp.*,
No. CIV.A. H-98-1148,1999 WL 33620108  (S.D. Tex. Dec. 22, 1999)...............................15

*Brody v. Zix Corp.*,
No. CIV.A. 304CV1931K, 2006 WL 2739352 (N.D. Tex. Sept. 26, 2006) ......................9, 13

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) ....................................................................13

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*,
497 F.3d 546 (5th Cir. 2007) ..................................................................................22

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
No. 6:12-1609, 2013 WL 1100819 (W.D. La. Mar. 15, 2013)................................16

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051 (W.D. La. Feb. 11, 2015)..............16

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).....................................................................................18

*Fener v. Belo Corp.*,
513 F. Supp. 2d 733 (N.D. Tex. 2007) ...............................................................15, 17

*Flaherty & Crumrine Preferred Income Fund Inv. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ...................................................................................25

*In re Akorn Sec. Litig.*,
240 F. Supp. 3d 802 (N.D. Ill. 2017) .....................................................................21

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)...................................................................24

*In re Elec. Data Sys. Corp. Sec. & "ERISA" Litig.*,
  298 F. Supp. 2d 544 (E.D. Tex. 2004)...................................................................24

*In re Enzymotec Sec. Litig.*,
  No. 14-5556 (JLL) (MAH), 2015 U.S. Dist. LEXIS 167403 (D. N.J. Dec. 15,
  2015) .........................................................................................................................19

*In re Fleming Cos. Secs. & Derivative Litig.*,
  2004 U.S. Dist. LEXIS 26488 (E.D. Tex. June 10, 2004)................................20, 24

*In re Nature's Sunshine Prods. Sec. Litig.*,
  486 F. Supp. 2d 1301 (D. Utah 2007)....................................................................19

*In re NetSolve, Inc.*,
  185 F. Supp. 2d 684 (W.D. Tex. 2001)...................................................................24

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015).....................................................................14

*In re Plains All American Pipeline, L.P. Sec. Litig.*,
  307 F. Supp 3d 583 (S.D. Tex. 2018), *aff'd on other grounds sub nom. Police
  & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F.
  App'x 726 (5th Cir. 2019)(per curiam).............................................................14, 16

*In re Triton Energy Ltd. Sec. Litig.*,
  No. 5:98-CIV-256, 2001 WL 872019 (E.D. Tex. Mar. 30, 2001)..........................19

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ..................................................................................24

*Irvin v. S. Snow Mfg.*,
  517 F. App'x 229 (5th Cir. 2013) ..............................................................................9

*Leleux v. United States*,
  178 F.3d 750 (5th Cir. 1999) .....................................................................................9

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) .......................................................................... *passim*

*Marcus v. J.C. Penney Co.*,
  No. 6:13-cv-736-MHS-KNM, 2015 U.S. Dist. LEXIS 131613 (E.D. Tex. Sep.
  29, 2015) ..................................................................................................................16

*Masel v. Villarreal*,
  924 F.3d 734 (5th Cir. 2019) ..............................................................................9, 19

*Mun. Employees' Ret. Sys. v. Pier 1 Imps., Inc.*,
    935 F.3d 424 (5th Cir. 2019) .................................................................20

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
    898 F.3d 461 (5th Cir. 2018) .................................................................25

*Omnicare, Inc. v. Labourers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015).....................................................................11, 12

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ...............................................................9, 19

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) ...............................................................9, 25

*Ramirez v. Exxon Mobil Corp.*,
    334 F. Supp. 3d 832 (N.D. Tex. 2018) .............................................12, 13, 20, 24

*Ret. Sys. v. Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012)......................................................20

*Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*,
    No. 8:07-CV-1952-T-26MAP, 2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ....................22

*Rougier v. Applied Optoelectronics, Inc.*,
    No. 4:17-CV-2399, 2019 WL 6111516 (S.D. Tex. Mar. 28, 2019) ................................15, 21

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) ...............................................................10, 15

*Singer v. Reali*,
    883 F.3d 425 (4th Cir. 2018) .................................................................17

*Singh v. 21Vianet Grp., Inc.*,
    No. 2:14-cv-00894-JRG-RSP, 2017 WL 4322483 (E.D. Tex. Sept. 13, 2017)................20, 24

*Singh v. 21Vianet Grp., Inc.*,
    No. 214CV00894JRGRSP, 2017 WL 4310154 (E.D. Tex. Sept. 28, 2017); .........................20

*Strougo v. Barclays PLC*,
    is instructive.  105 F. Supp. 3d 330 (S.D.N.Y. 2015) ...........................................18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).......................................................................8, 19

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    No. 15-cv-2106 (ER), 2017 WL 1169629 (S.D.N.Y. Mar. 28, 2017) ....................................18

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
    28 F. Supp. 3d 93 (D. Mass. 2014) .................................................................................21

*Wieland v. Stone Energy Corp.*,
    No. CIV.A. 05-2088, 2007 WL 2903178 (W.D. La. Aug. 17, 2007).....................................23

**Statutes**

Title 58 Pa. C.S.............................................................................................. *passim*

15 U.S.C. § 78j(b) .............................................................................................2, 9, 25

15 U.S.C. § 78t(b) ................................................................................................25

**Rules**

Fed. R. Civ. P. 5(b)(2).............................................................................................1

Fed R. Civ. P. 12(b)(6).............................................................................................9

**Other Authorities**

25 Pa. Code § 78.102 ....................................................................................... *passim*

## I.    PRELIMINARY STATEMENT

Range Resources Corporation ("Range" or the "Company") and its executives committed fraud.  Plain and simple.  Regulations require Range to properly classify its wells in applications to Pennsylvania's Department of Environmental Protection ("DEP").  Range is supposed to classify wells as "abandoned" that have not produced in twelve months and have no viable future use and is then required to "plug" them so as not to cause harm to people or the environment.  Following an investigation, which included a review of Range's documents, the DEP found that for *over four years* Defendants *purposefully* misclassified forty-two wells that should have been abandoned and plugged.  Defendants seek to belittle their blatant fraud with words like "routine" and "fact of life." But the DEP investigation was far from "routine" and fraud should not be a "fact of life."  The DEP investigation commenced because Defendants screwed up.  They accidentally unmasked their machinations by including an internal memorandum with one of their applications to the DEP, proving they had sought "inactive" status for a well that they knew qualified as "abandoned."  Range admitted to its intentional misclassification of forty-two wells in a Consent Assessment of Civil Penalty ("CACP") with the DEP, which assessed a civil penalty against the Company and required that it undertake the exorbitant costs of plugging the misclassified wells.

For five years, Defendants hid their egregious regulatory violations from investors.  In SEC filings beginning on April 29, 2016, Defendants comprehensively set forth their financial obligations and costs to abandon and plug wells without hinting to the forty-two misclassified wells; falsely claimed compliance with applicable regulations and the Company's Code of Ethics ("Code") (while acknowledging that such compliance is a "minimum, essential condition for performance of our duties"); purported to operate "in everything we do" with "integrity" and "transparency;" failed to disclose the resulting risk of reputational damage, regulatory investigation and enforcement; and failed to disclose the DEP investigation though purporting to

report on all environmental proceedings.  By speaking on these topics, Defendants triggered a duty to speak the full truth. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 249 (5th Cir. 2009).

The Complaint adequately alleges that Defendants issued their misstatements with scienter. These allegations include, *inter alia,* the DEP investigation, the DEP's findings, Defendants' admission to their misconduct in the CACP, Defendants' accidental admission to their misconduct in the inadvertently produced internal memorandum, and Defendants' access to daily reports showing well field levels and identifying which wells continued to produce and which did not— data they needed to apply for classification of wells with the DEP.  The Complaint also sets forth allegations of motive, including avoiding the exorbitant costs of plugging wells (which the DEP concluded Defendants sought to defer through their misclassification scheme) and avoiding the loss of inexpensive leaseholds they'd forfeit by abandoning and plugging wells.  These allegations, among others set forth below, demonstrate an inference of scienter that is at least as compelling as any opposing inference (though Defendants' have not proffered any).  Falsity and scienter are thus adequately pled.  Given Defendants' concession that the Complaint adequately pleads the remaining elements of the § 10(b) claim, Defendants' motion to dismiss should be denied.

## II.   STATEMENT OF FACTS

Range engages in the exploration, development, and acquisition of natural gas and oil properties. ¶ 24. The Company owns and operates wells in the Appalachian region, including Pennsylvania.  *Id.*  Under Pennsylvania regulations, Range must apply for the correct designation of the status of its wells with local regulators.  *Id.*  These status designations include, for example, "active," "inactive," or "abandoned." *Id.*  The DEP enforces these regulations.  ¶ 25.

Under 25 Pa. Code §78.102(4), a company applying to designate a well as "inactive" has to "certify that the well is of future utility" and "present a viable plan for utilizing the well within a reasonable time. ¶ 26. Additionally, § 3214(a)(3) of the Pennsylvania Statutes Title 58 Pa. C.S.

Oil and Gas §§ 3201-3274 ("2012 Oil and Gas Act") provides that a well can only be deemed "inactive," if, *inter alia,* "the operator anticipates construction of a pipeline or ***future use of the well*** for primary or enhanced recovery, gas storage, approved disposal or other appropriate uses ***related to oil and gas well production*…**" (emphasis added). ¶ 27.

If a well is not viable for future use, it must be classified as "abandoned" and plugged. ¶ 25. § 3203 of the 2012 Oil and Gas Act provides that a well "that has not been used to produce, extract or inject any gas, petroleum or other liquid within the preceding 12 months" qualifies as an "abandoned well." ¶ 27.  According to §3220(a), "Upon abandoning a well, the owner or operator shall plug it in the manner prescribed by regulation of the department…" ¶ 28.  Misclassifying a well that should be "abandoned," and failing to plug that well, constitutes "unlawful conduct" under 58 Pa. C.S. § 3259 and subjects the violator to a civil penalty. 58 Pa. C.S. § 3256. ¶ 29.

Plugging abandoned wells is a costly endeavor, according to Confidential Witness ("CW") 1[1], CW2, and CW3. ¶ 30. The Company had annual expenses for "abandonment and impairment of unproved properties" ranging from $30.1 million in 2016 to $1.2 billion in 2019. *Id.*  In addition to cost, CW3 explained that the Company had an additional incentive to classify wells as inactive rather than abandoned.  ¶ 31.  The Company bought "tons of cheap leases" that are now worth exponentially more, and wanted to keep wells classified as inactive because once a well is plugged and filled with cement, the Company loses its leasehold and has to obtain a costly new lease and equipment to use that land again. *Id.*  CW3 explained that the Company is buying time in case in the future there is "new drilling technology or better geology mapping." *Id.*  CW4, who had the job of "making the call" to ask Range for money to abandon and plug wells that could no longer produce, confirmed the Company's incentive to wait to classify a well as abandoned to defer costly

---

[1] Each CWs role and years of employment are set forth in the Complaint, pgs. 9-12.

expenses. *Id.* CW4 stated that when asking to plug and abandon wells, the Company would say no because they would be "spending money and getting nothing out of it." *Id.* CW2 confirmed that Range classified wells to make it look like they had more producing wells then they did. *Id.*

Indeed, Defendants improperly designated **_42_** wells in Pennsylvania as inactive from July 16, 2013 through October 11, 2017, though these wells qualified as abandoned. ¶ 32. According to the DEP, "Unplugged abandoned wells can be an extreme hazard to the health and safety of people and the environment. Leaking wells can contribute to air, water, and soil contamination." *Id.* The DEP became aware of Defendants' machinations when they applied for inactive status for Shirocky Unit #1, Permit No. 051-20829 well ("Shirocky"). ¶ 33. The application stated that "significant reserves remain in place and I plan to return the well to production." *Id.* The application even stated that the well would return to use in September 2022. *Id.* Range further represented that the application complied with 25 Pa. Code § 78.102, and stated, "Range Resources certifies that this well is of future utility and that significant reserves remain in place that Range intends to produce." *Id.* However, Range inadvertently attached an internal memorandum ("Shirocky Memo") stating that Shirocky had "last produced to sales in December 2016," "had become incapable of economic production," and "not capable of gas sales going forward." ¶ 34. Nevertheless, the Shirocky Memo indicated that Range would "file for Inactive Status for this well," even though it undisputedly should have been classified as "abandoned" and plugged. *Id.* According to CW1, Defendant Ventura received reports on the status of each well, including which wells were producing and which wells were shut down. ¶ 37. CW4 corroborated Defendant Ventura's involvement, explaining that he was "heavily involved in the operations in PA." *Id.* CW1 stated that reports went out every 12 hours showing well field levels.

As a result of the Shirocky Memo, the DEP issued a subpoena to Range on November 3, 2017 seeking documents relating to wells for which Range had requested inactive status.  ¶ 35. The DEP concluded that **forty-two** wells the Company had classified as inactive had no "future utility or significant reserves remaining in place," and should have been classified as abandoned and plugged. *Id.*  The DEP found that Range had violated 58 Pa. C.S. §3259 for failing to adhere to 25 Pa. Code §78.102(4) and 58 Pa. C.S. §3214(a)(3).  ¶ 36.  On January 7, 2021, Range signed a "Consent Assessment of Civil Penalty" with the DEP ("CACP")[2] with the DEP **admitting to their misconduct** ("Range agrees that the Findings … above are true and correct and, in any matter or proceeding involving Range and the Department, Range shall not challenge the accuracy or validity of these Findings"). *Id.*  The DEP imposed a fine of $294,000. *Id.*  At no point during the Class Period, **even after executing the CACP**, did Defendants reveal their misclassification of the wells, the DEP subpoena, the DEP's findings, nor the imposition of the civil penalty. *Id.*

According to CW1, Range Resources has a history of environmental regulatory violations. Previously, the Company pleaded no contest to criminal charges of negligent oversight of two well sites in Washington County. *Id.*   CW1 explained that the Grand Jury found that Range Resources had knowingly covered up leaking problems with those wells.  *Id.*  CW5 attested to Range's history of DEP and government investigations throughout the years of CW5s employment. *Id.*

### Defendants Issue Materially False and Misleading Statements

In each 10-K filed during the Class Period, Defendants represented their compliance with the Code, which states they will "conduct business in accordance with all applicable federal, state, and local laws and regulations," and that such compliance is a "minimum, essential condition for performance of our duties." ¶ 38.  Defendants also stated in the Code that they are, "committed to

---

[2] https://files.dep.state.pa.us/newsroom/NewsroomPortalFiles/Range_Executed_CACP.pdf

being a steward of the environment in all areas in which we operate." *Id.* In each 10-K, Defendants stated that they "are in compliance with currently applicable laws and regulations, " including, "environmental laws and regulations," such as "plugging and abandoning of wells," and assured investors that "the continued substantial compliance with existing requirements will not have a material adverse effect on our financial position, cash flows or results of operations." ¶¶ 53, 66, 82. Range further represented on its website that its core values include "integrity" and "transparency," convincing shareholders that its "performance is driven by the company's commitment to act with integrity in everything we do," specifying "principled business decision-making," and identifying "transparency and accountability" as "the core of our culture." ¶ 40.

The foregoing statements were false and/or misleading given that throughout the Class Period, Defendants did not adhere to the Code nor did they act with "integrity" or "transparency" due to their undisclosed violations of 58 Pa. C.S. §3259 and failure to meet the requirements of 25 Pa. Code §78.102(4) and 58 Pa. C.S. §3214(a)(3). Specifically, Defendants misled investors and failed to disclose that: (i) they had been improperly designating wells in Pennsylvania as inactive that qualified as abandoned since at least 2013; (ii) they failed to "plug" these abandoned wells in accordance with applicable regulations, thus creating serious health, safety, and environmental risks; (iii) the foregoing conduct subjected the Company to reputational risk, a heightened risk of regulatory investigation and enforcement, as well as artificially decreased the Company's periodically reported cost estimates to plug and abandon its wells; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

In each 10-Q filed during the Class Period, Defendants described Range's asset retirement obligations ("AROs"), defined as "the estimated present value of the amounts we will incur to plug, abandon and remediate our producing properties at the end of their productive lives."

Defendants reported AROs ranging from $79.951 million to $315.500 million, and expenses for abandonment and impairment of unproved properties ("Additional Expenses") ranging from $4.4 million to $1.2 billion. ¶¶ 42, 45, 47, 49, 56, 58, 60, 62, 65, 71, 73, 76, 78, 81, 85, 86, 88, 93, 97, 99, 101.  In each 10-K, Defendants described their "significant obligations to remove tangible equipment and restore the surface at the end of natural gas and oil production operations. Removal and restoration obligations are primarily associated with plugging and abandoning wells." ¶¶ 50, 64, 80.  However, Defendants did not reveal that they violated 58 Pa. C.S. §3259 by failing to meet the requirements of 25 Pa. Code §78.102(4) and 58 Pa. C.S. §3214(a)(3) because they had improperly designated wells in Pennsylvania as inactive that qualified as abandoned since at least 2013 and failed to "plug" these wells, thus deferring significant costs, creating serious health, safety, and environmental risks as well as subjecting Range to reputational and regulatory risks. Defendants Manny and Ginn signed the 10-Qs until April 25, 2018; Defendants Scucchi and Ginn signed the 10-Qs from July 30, 2018 onward. Defendants Ventura, Manny and Ginn signed the 2016 and 2017 10-Ks; Defendants Ventura, Scucchi and Ginn signed the 2018 and 2019 10-Ks.

Moreover, attached to each 10-Q and 10-K were misleading SOX certifications (signed by Defendants Ventura and Manny until April 25, 2018 and then Defendants Ventura and Scucchi from July 30, 2018 on) wherein Defendants certified that the information contained therein "fairly represents in all material respects, the financial condition and results of operations of the Company," and that they had "designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared." ¶¶ 43, 45, 47, 54, 56, 58, 60, 69, 71, 74, 76, 83, 85, 86, 88, 95, 97, 99, 101.

Beginning on February 28, 2018, Defendants purported to disclose all environmental proceedings but did not disclose the DEP investigation into Ranges well designations (which began in 2017).  ¶¶ 67-68, 82, 88, 94, 97, 99, 101.

### The Truth Emerges

On February 10, 2021, the DEP issued a press release announcing the execution of the CACP and the $294,000 penalty for violations of the 2012 Oil and Gas Act (Oil and Gas Act). ¶ 105.  The press release explained that the DEP undertook the investigation into Range's well designations after discovering inaccurate and conflicting information in Range's application to designate Shirocky as inactive. *Id.* The investigation uncovered that between July 2013 and October 2017 Range applied for inactive status for ***forty-two wells*** that should have been classified as abandoned and plugged. *Id.* According to the DEP, "Range Resources used the inactive status period to delay the eventual plugging of unproductive wells without returning them to active status" and "should have classified the wells with no viable future use as abandoned and plugged them." ¶ 106.  The Company's stock fell $0.62 per share, or 6.08%, on February 11, 2021. ¶ 107.

## III.   ARGUMENT

### A.   STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)[3]. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept all factual allegations in the complaint as true" and must consider the complaint in its entirety. *Tellabs, Inc. v. Makor*

---

[3] Emphasis is added and citations are omitted throughout unless otherwise stated.

*Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Courts also must "draw all reasonable inferences in the plaintiff's favor." *Lormand*, 565 F.3d at 232.  "A Rule 12(b)(6) motion should be granted only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). 12(b)(6) motions are "viewed with disfavor and rarely granted." *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999); *see also Brody v. Zix Corp.*, No. CIV.A. 304CV1931K, 2006 WL 2739352, at *2 (N.D. Tex. Sept. 26, 2006) ("in the context of securities fraud, a dismissal pursuant to Rule 12(b)(6) is difficult to obtain since such a claim revolves around fact-specific inquiries.").

### B.    PLAINTIFF ADEQUATELY ALLEGES EXCHANGE ACT VIOLATIONS

To state a Securities Exchange Act of 1934 §10(b) claim, a plaintiff must allege: "(1) a material misrepresentation (or omission), (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as transaction causation; (5) economic loss; and (6) loss causation, i.e., a causal connection between the material misrepresentation and the loss." *Id*. at 238–39.  Defendants solely challenge falsity and scienter, thus conceding that Plaintiff has adequately pled the remaining four elements of the claim.  *See Irvin v. S. Snow Mfg.*, 517 F. App'x 229, 231 (5th Cir. 2013) (argument waived when not raised in opening brief).

### 1.    THE COMPLAINT ADEQUATELY ALLEGES FALSITY

To adequately plead false or misleading statements with particularity, a complaint must """"specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.""" *Barrie v. Intervoice-Brite, Inc*., 397 F.3d 249, 256 (5th Cir. 2005), opinion modified on denial of reh'g, 409 F.3d 653 (5th Cir. 2005); *see also Plotkin v. IP Axess Inc*., 407 F.3d 690, 696 (5th Cir. 2005); *Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019), as revised (June 6, 2019).

Defendants do not dispute that the Complaint identifies the statements and speakers with particularity.  The Complaint also adequately alleges that Defendants' material misstatements misled investors by: 1) inaccurately reporting Range's costs to abandon and plug wells, due to their misclassification and failure to timely plug forty-two wells; 2) falsely claiming compliance with regulations and the Code as well as purporting to operate with "integrity" and "transparency;" 3) failing to disclose the resulting risk of reputational damage, regulatory investigation and enforcement, and of incurring the hefty costs of abandoning and plugging those wells; and 4) failing to disclose the DEP investigation when reporting on environmental proceedings.

### a)      Defendants' Statements Regarding Their Costs to Abandon and Plug Wells are Actionable

The Complaint alleges that Defendants spoke comprehensively about the Company's AROs, Additional Expenses, and "significant obligations," *i.e.*, their costs and obligations to abandon and plug wells, but never revealed they violated 58 Pa. C.S. §3259 by failing to adhere to 25 Pa. Code §78.102(4) and 58 Pa. C.S. §3214(a)(3).  Specifically, Defendants hid from investors that, in violation of these regulations, they did not abandon and plug *forty-two* wells though they had "not been used to produce, extract or inject any gas, petroleum or other liquid within the preceding 12 months."  These regulatory violations not only posed great environmental harm but also triggered risks of reputational damage, regulatory investigation, penalties, and ultimately the costly endeavor of plugging these wells. By opting to speak in detail about the costs of abandoning and plugging wells (*both present and future*), Defendants incurred a duty to disclose that they had purposefully misclassified *forty-two* wells as "inactive," failed to abandon and plug them accordingly, and—later in the Class Period— that these violations triggered a DEP investigation. As the Fifth Circuit holds, "'a duty to speak the full truth arises when a defendant undertakes a duty to say anything.'" *Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994).  Once defendants

choose to speak publicly on a topic, "they ha[ve] a duty to disclose a 'mix of information' that is not misleading." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 249 (5th Cir. 2009).

Seeking to hold Plaintiffs to an unreasonable burden, Defendants argue that the Complaint does not quantify how their regulatory violations and the DEP settlement changed their "operational costs." Def. Br. at 14. The PSLRA requires does not require that level of detail prior to discovery given that this information is uniquely in Defendants' control-- Defendants opted not to break out that metric in their SEC filings or disclose their precise costs for plugging those forty-two wells. Regardless, the precise dollar amount is not the point. This is not a restatement case. The point is that Defendants chose to speak comprehensively on the topic of abandoning and plugging wells. Having chosen to speak publicly on that topic (and having elsewhere assured investors that they complied with applicable environmental regulations, *see infra*), they undertook a "duty to disclose a mix of information that is not misleading."

Defendants cannot hide behind *Omnicare, Inc. v. Labourers Dist. Council Constr. Indus. Pension Fund,* 575 U.S. 175 (2015). Even assuming *arguendo* that AROs are "opinions," Defendants knew facts that a reasonable person would assume did not exist when hearing the "estimate," *i.e.*, that Defendants did not accurately calculate the AROs given their failure to timely plug and abandon forty-two wells. *Id.* Defendants concede that "timing of retirement," *i.e.*, <u>when</u> they will abandon and plug a well, factors into the ARO calculation. Def. Br. at 15. In other words, failing to "retire" forty-two wells and plug them <u>*in a timely fashion*</u> impacts their computations. Additionally, the costs of abandoning and plugging these forty-two wells were not "future costs," or estimates, but costs that Defendants could have calculated with certainty and should have incurred between 2013 and 2017, when each of the forty-two wells had not produced for a period of twelve months. Moreover, Defendants don't deign to suggest that Additional Expenses, which

rose as high as $1.2 billion during the Class Period, or the other "significant obligations" associated with abandoning and plugging wells qualified as opinions.  With good reason— they did not.

> **b)     Defendants' Statements Regarding Compliance With Regulations and the Code, and their "Integrity" and "Transparency" are Actionable**

The Complaint alleges that despite *years* of regulatory violations, Defendants represented that they complied with all applicable regulations, ***emphasizing those requiring "plugging and abandoning of wells."*** ¶¶ 53, 66, 82.  Relatedly, Defendants assured investors that they complied with the Code, wherein they stated that compliance with applicable regulations is a "minimum, essential condition for performance of our duties," and wherein they represented that they are "committed to being a steward of the environment in all areas in which we operate." ¶ 38. However, Defendants had not met this "minimum, essential condition," having violated applicable regulations by improperly misclassifying ***forty-two*** wells that should have been deemed abandoned and plugged.  Their promises of "commit[ment] to being a steward of the environment" were equally farcical.  According to the DEP, "[u]nplugged abandoned wells can be an extreme hazard to the health and safety of people and the environment. Leaking wells can contribute to air, water, and soil contamination."  ¶ 32.  Choosing profit over ethics and legality, Defendants classified wells that had "no viable future use" as "inactive" rather than "abandoned."

Defendants cannot escape liability simply by using the words "we believe" when promising "substantial compliance." *Omnicare*, 575 U.S. at 193 ("[t]hose magic words can preface nearly any conclusion, and the resulting statements, as we have shown, remain perfectly capable of misleading investors"). Opinion statements are actionable "when the speaker did not genuinely hold that opinion and the statement is false." *Ramirez v. Exxon Mobil Corp*., 334 F. Supp. 3d 832, 847-48 (N.D. Tex. 2018) (*citing Omnicare*, 575 U.S. at 185-86). Further, "[e]ven if the speaker genuinely holds the opinion, the statement may be a material misstatement by omission if the

12

speaker 'omits material facts about the [speaker's] inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself.'" *Id*. Defendants *knew* they had not complied with applicable regulations or their Code for a *four-year period. See infra,* § 2.

Indeed, the DEP began its investigation because Range inadvertently attached the Shirocky Memo to its application for inactive status, which demonstrated that Defendants knew the well qualified as abandoned but nevertheless planned to seek "inactive" status. Defendants admitted to intentionally misclassifying the wells in the CACP. Further, five CWs, corroborating one another, stated that Defendants had strong incentives to misclassify wells as inactive rather than abandoned and knew the production status of each misclassified well. ¶¶ 31, 37. *Carlton v. Cannon*, 184 F. Supp. 3d 428, 472-73 (S.D. Tex. 2016); *see also Brody*, 2006 WL 2739352, at *4 (CW statements can support falsity). These CWs explained that Range misclassified wells to avoid the exorbitant costs of abandoning and plugging wells, to avoid losing inexpensive leaseholds that would require them to take on costly new leases and equipment to use the land again, and to buy time in case at some point in the future there is "new drilling technology or better geology mapping." Moreover, CWs confirmed Defendant Ventura's heavy involvement in Range's Pennsylvania operations and his receipt of daily reports showing well field levels. Defendants therefore knew that the forty-two wells at issue had been misclassified from 2013-2017 and had no basis for stating any "belief" that they had substantially complied with applicable regulations. *See Bach v. Amedisys, Inc*., No. 10-00395-BAJ-RLB, 2016 U.S. Dist. LEXIS 111077, at *39 (M.D. La. Aug. 19, 2016)(finding compliance-related statements actionable because, even assuming they constituted opinions, defendants "[were] aware of a 'gross disparity between prediction and fact'" given their violation of CMS regulations). That Defendants knew about these violations is unsurprising given their

history of environmental regulatory infractions and investigations, according to two CWs. ¶ 37.

Additionally, Defendants did not qualify their statements in the Code with words of "belief."  They stated that they will "conduct business in accordance with all applicable federal, state, and local laws and regulations," and made clear that such compliance is a "minimum, essential condition for performance of our duties."  This "surrounding text" referring to regulatory compliance as a "minimum, essential condition" conveyed to investors that regulatory compliance is a given, a necessity.  No reasonable investor would read this and consider the possibility that knowing violations of applicable regulations existed at the time. *Bach*, 2016 U.S. Dist. LEXIS 111077, at *37  (finding compliance-related statements actionable where the defendant company touted compliance as "central to everything we do").  Defendants' additional representation regarding legal compliance renders this case distinguishable from *In re Plains All American Pipeline, L.P. Sec. Litig.,* 307 F. Supp 3d 583, 635 (S.D. Tex. 2018), *aff'd on other grounds sub nom. Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.,* 777 F. App'x 726 (5th Cir. 2019)(per curiam), which holds that "surrounding text" is relevant and that statements should not be "viewed in a vacuum."  Moreover, in *Plains,* the defendants "learned about many of the violations *after* the statements [regarding substantial compliance] were made." *Id.*  Here, the Defendants knew about their regulatory violations at the time they made their statements.

The statements in the Code are not puffery. Def. Br. at 16.  Only statements that ""contain no concrete factual or material misrepresentation"" may be deemed puffery. *Lormand*, 565 F.3d at 249 n.14. When statements regarding ethics and integrity are "made repeatedly in an effort to reassure the investing public about the Company's integrity, a reasonable investor could rely on them as reflective of the true state of affairs at the Company."  *In re Petrobras Sec. Litig*., 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015).  Defendants did not state that they aspire to comply with

regulations.  They stated that compliance is a "minimum, essential condition for performance of our duties."  Yet they knew they had failed to meet this "minimum, essential condition."  *Rougier v. Applied Optoelectronics, Inc*., No. 4:17-CV-2399, 2019 WL 6111516, at *10 (S.D. Tex. Mar. 28, 2019) (statements not puffery where plaintiffs "alleged specific facts to show that Defendants' statements were belied by" circumstances at the time).  Similarly, while claiming to be a "steward of the environment in all areas in which we operate," Defendants knew they had misclassified and failed to plug the wells, which, according to the DEP, causes "extreme hazard to the health and safety of people and the environment" because "[l]eaking wells can contribute to air, water, and soil contamination."  ¶¶ 5, 25. Considered in tandem with their statements of "substantial compliance," ¶¶ 53, 66, 82, 94, and claims that "integrity" and "transparency" "reflect how we operate as a company," drives their "principled busines decision making," and that "stakeholders have insight into our operations," ¶ 40, investors would have assumed a state of affairs markedly different than reality.  In any event, dismissal on puffery grounds is tantamount to determining materiality, which "'is a mixed question of law and fact [that] it is usually left for the jury.'" *Fener v. Belo Corp*., 513 F. Supp. 2d 733, 746 (N.D. Tex. 2007).

Further, Defendants' boilerplate litany of cautionary statements, also deceitful, do not exculpate. Def. Br. 7-8. The law is clear that "'inclusion of some cautionary language in a company's disclosures is "not enough to support a determination as a matter of law that defendant's statements were not misleading."'" *Berger v. Compaq Comput. Corp*., No. CIV.A. H-98-1148,1999 WL 33620108, at *13 (S.D. Tex. Dec. 22, 1999). Acknowledging the applicability of "extensive regulation" and generically warning about the potential repercussions of failing to comply with regulations are meaningless when the violations and risk of repercussions have already come to pass. *Rubinstein*, 20 F.3d at 171 ("'To warn that the untoward may occur when

15

the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit.'"); *Marcus v. J.C. Penney Co*., No. 6:13-cv-736-MHS-KNM, 2015 U.S. Dist. LEXIS 131613, at *10 (E.D. Tex. Sep. 29, 2015).[4]

### c) Defendants' Statements Regarding Environmental Proceedings are Actionable

The Complaint alleges that the DEP began an investigation into Range's misclassification of wells <u>in 2017</u>, which investigation triggered the risk of a fine in excess of $100,000 along with a finding that Defendants would have to pay the exorbitant costs of plugging forty-two misclassified wells. Nevertheless, Defendants failed to disclose the investigation though purporting to disclose environmental proceedings in their SEC filings.

Ignoring relevant facts and case law, Defendants argue that they had no obligation to disclose uncharged misconduct. Defendants have a "duty to speak the full truth." *Lormand*, 565 F.3d at 249 (*quoting Rubinstein*, 20 F.3d at 170); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc*., No. 6:12-1609, 2015 U.S. Dist. LEXIS 26051 (W.D. La. Feb. 11, 2015); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc*., No. 6:12-1609, 2013 WL 1100819, at *7 (W.D. La. Mar. 15, 2013). When a company makes a disclosure, "whether it be voluntary or required—there is a duty to make it complete and accurate." *Bach*, 2016 U.S. Dist. LEXIS 111077, at *33. In addition to consistently claiming compliance with all applicable regulations, specifying those pertaining to abandoning and plugging wells, Defendants also purported to disclose its only "Environmental Proceeding" that could "result in monetary sanctions of more than $100,000." These statements triggered a duty to disclose the DEP investigation that began in 2017. Indeed, that investigation ultimately resulted in a penalty of $294,000—well over $100,000-- and required

---

[4] This fact further distinguishes this case from *Plains;* the warnings there "emphasized that it was not only possible but probable that there would be future oil spills." *Plains,* 307 F. Supp 3d at 635.

16

Defendants to incur the hefty costs of properly classifying forty-two wells as abandoned and plugging them appropriately. *See Singer v. Reali,* 883 F.3d 425, 441 (4th Cir. 2018) (holding there is a duty to disclose illegal conduct, even if it is uncharged or unadjudicated, if failing to disclose the information would make other statements misleading).

Defendants' materiality arguments are misplaced. It is well established that materiality involves questions of fact and is thus not appropriate for adjudication at the pleading stage. *Fener v. Belo Corp.*, 513 F. Supp. 2d at 746. Regardless, the Complaint sufficiently pleads materiality. "[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Lormand*, 565 F.3d at 248. Disclosing that Defendants violated applicable regulations by intentionally misclassifying forty-two wells as inactive that should have been abandoned and plugged, which raised risks of reputational damage and regulatory investigation, undeniably altered the "total mix" of information made available given Defendants' assurances of legal compliance, their disclosure of only one environmental proceeding, their stated commitment to "integrity" and "transparency," and their detailed representations regarding their costs and obligations to abandon and plug wells.

Missing the point entirely, Defendants argue that the amount of the fine is immaterial as compared to Range's total assets and they thus had no obligation to disclose. Def. Br. at 11. The Complaint does not allege that Defendants failed to disclose a $294,000 fine (though they certainly knew during the Class Period that any fine would likely exceed $100,000), but rather that they failed to disclose a *four-year long* spate of regulatory violations and the existence of a regulatory

17

investigation prompted by the Shirocky Memo.[5]  Even if the amount Range ultimately paid had any relevance to materiality, Defendants' assumptions are faulty. They do not take into account the exorbitant costs they had to incur to abandon and plug those wells to comply with the CACP.[6]

In any event, qualitative factors can also demonstrate materiality.  *See ECA, Local 134 IBEW Joint Pension Tr. of Chicago. v. JP Morgan Chase Co.*, 553 F.3d 187, 203-04 (2d Cir. 2009). *Strougo v. Barclays PLC*, is instructive.  105 F. Supp. 3d 330, 349 (S.D.N.Y. 2015).  There, the court found defendants' statements material even though "LX's revenue in relation to the overall revenue of Barclays PLC is far below the five percent threshold" because the misstatements "call into question the integrity of the company as a whole" and the company had consistently touted its integrity.  *Id.*; *see also Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15-cv-2106 (ER), 2017 WL 1169629 , at *12 (S.D.N.Y. Mar. 28, 2017) (underreporting amounting to 0.5% of average annual income and 0.8% of average annual paid income tax found material because revelation of the fraud caused a drop in the value of defendant's securities, regulatory penalties, and reputational harm).  Here too, Defendants consistently touted their "integrity" and "transparency" as "core values" that "guide us in the work we do every day as a natural gas industry leader." ¶ 40.

### d)   Defendants' Admissions Establish Falsity

While the foregoing particularized allegations suffice to allege falsity, the Complaint goes further.  Defendants ***admitted to their misconduct*** in the CACP: "Range agrees that the Findings in Paragraphs A through H, K and M, above are true and correct and, in any matter or proceeding

---

[5] Moreover, the existence of a DEP investigation and regulatory violations are objective facts, not matters of opinion. Def. Br. at 12. Defendants knew these *facts* existed and chose to hide them. Defendants cannot hide behind *Omnicare*- their thoughts or opinions as to the precise amount of any resulting fine are not the point, though they knew how many wells they had misclassified and knew the resulting fine and costs to plug these wells would therefore be significant.
[6] The parties' arguments underscore that questions of fact abound, and materiality is therefore not an appropriate basis for dismissal.

involving Range and the Department, Range shall not challenge the accuracy or validity of these Findings." ¶ 36. It is axiomatic that later admissions "can provide useful circumstantial evidence that a given representation was false when made." *Masel*, 924 F.3d at 750 (citing *Lormand*, 565 F.3d at 254); *see also Plotkin*, 407 F.3d at 698 ("allegations of later-emerging facts can . . . provide warrant for inferences about an earlier situation").[7]

### 2.    THE COMPLAINT ADEQUATELY ALLEGES SCIENTER

"'The required state of mind [for scienter] is an intent to deceive, manipulate, or defraud or severe recklessness.'" *Lormand*, 565 F.3d at 251. "Severe recklessness does not require that the defendant be aware of the actual falsity of his or her representation," for it simply "refers to those highly unreasonable omissions or misrepresentations ... that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *In re Triton Energy Ltd. Sec. Litig.*, No. 5:98-CIV-256, 2001 WL 872019, at *10 (E.D. Tex. Mar. 30, 2001). When evaluating scienter, a court must "accept[] all of the factual allegations in the complaint as true" and "must consider the complaint in its entirety." *Id.* "The inquiry is whether all of the facts alleged, taken collectively, give rise to a strong plausible inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* The scienter inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324. It need only be "cogent and at least as compelling as any opposing inference" (id.), and "a tie favors the plaintiff."

---

[7] Additionally, given that each 10-K and 10-Q Defendants filed during the Class Period contained misleading statements, their SOX certifications are actionable as well. Therein, the Individual Defendants certified that each filing "fairly presents, in all material respects, the financial condition and results of operations of the Company." *See, e.g.*,¶ 43. For the reasons set forth herein, they did not. The SOX certifications are therefore actionable. S*ee In re Enzymotec Sec. Litig.*, No. 14-5556 (JLL) (MAH), 2015 U.S. Dist. LEXIS 167403, at *53-54 (D. N.J. Dec. 15, 2015) (finding plaintiffs sufficiently pleaded a false or misleading statement as to SOX certifications); *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301 (D. Utah 2007) (same).

*Lormand*, 565 F.3d at 254.  Defendants' conclusory and baseless arguments ignore the many scienter allegations in the Complaint, which, considered holistically, allege an inference of scienter certainly equally compelling as any opposing inference.  However, Defendants offer no competing inference, much less one more compelling than the strong scienter inference pled in the Complaint.

### a)      Defendants' Access to Information Supports an Inference of Scienter

The Complaint alleges, based on CW1's statements, that Defendant Ventura received daily reports on each well's status showing well field levels, and stating which wells were producing and which were shut down.  ¶ 37.  CW4 confirmed that Defendant Ventura was "heavily involved in the operations in PA." *Id.*  These allegations support a strong inference of actual knowledge of, or severe recklessness as to, the falsity of the alleged misstatements. *See, e.g., City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp*., 875 F. Supp. 2d 359, 369-71 (S.D.N.Y. 2012).  The reports notified Defendant Ventura that the forty-two wells Range sought to misclassify as "inactive" had not produced oil or natural gas for twelve consecutive months. *See, e.g., Ramirez*, 334 F. Supp. 3d at 853 (holding that defendants' access to contradictory information provided "more than mere conclusory allegations that Defendants . . . must have had knowledge" of the information); *Singh v. 21Vianet Grp., Inc*., No. 2:14-cv-00894-JRG-RSP, 2017 WL 4322483, at *3 (E.D. Tex. Sept. 13, 2017), report and recommendation adopted, *Singh v. 21Vianet Grp., Inc.,* No. 214CV00894JRGRSP, 2017 WL 4310154 (E.D. Tex. Sept. 28, 2017); *In re Fleming Cos. Secs. & Derivative Litig.*, 2004 U.S. Dist. LEXIS 26488 (E.D. Tex. June 10, 2004).  Defendants needed to review these reports to know the status of each well to seek classification of those wells with the DEP.

These allegations satisfy both requirements in *Mun. Employees' Ret. Sys. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 434 (5th Cir. 2019), Def. Br. at 19.  Unlike in *Pier 1,* well field levels and status

20

of production would have alerted Defendants to which wells no longer produced. The Complaint alleges that these reports were generated and provided to Defendants daily. Given that Range's *entire business* centers on the production of its wells and given Defendant Ventura's "heavy involvement," it is unthinkable that Defendants did not read the reports. The Shirocky Memo proves Defendants knew but intentionally disregarded the data in these reports to misclassify wells.

### b) Defendants' Admissions Support an Inference of Scienter

Defendants admitted to their misconduct in the CACP. ¶ 36. These admissions support the inference of scienter. *Lormand*, 565 F.3d at 254 (concluding scienter was adequately alleged, even when allegation was partially based on later admissions by defendants, because the admissions "directly and cogently tend to prove their state-of-mind at the time of their misleading statements and omissions, *i.e.*, they are evidence that the defendants actually knew earlier that the course of action would turn out badly"). Defendants also admitted during the Class Period that regulatory compliance is a "minimum, essential condition for performance of our duties." ¶ 38. The most compelling inference is that Defendants would have kept apprised regarding this "minimum, essential condition," to the operation of its entire business. *See, e.g., Rougier*, 2019 WL 6111516, at *12 ("The Fifth Circuit has held that material misstatements as to a company's most significant asset can give rise to a strong inference that those misstatements were made with knowledge of their falsity or severe recklessness in not knowing that they were false.").

### c) The DEP Investigation, Findings, and the Shirocky Memo Support an Inference of Scienter

The DEP investigation, which began in 2017, supports in inference of scienter. *See In re Akorn Sec. Litig*., 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017) ("That the SEC and DOJ initiated investigations provides additional support for finding that scienter has been adequately pleaded."); *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc*., 28 F. Supp. 3d 93, 115 (D. Mass. 2014)

("[G]overnment investigation[s] can be seen as one more piece of the puzzle, a series of circumstances that add up to a strong inference of scienter."); *Rosky ex rel. Wellcare Health Plans, Inc. v. Farha*, No. 8:07-CV-1952-T-26MAP, 2009 WL 3853592, at *7 (M.D. Fla. Mar. 30, 2009). This is particularly so given that the Shirocky Memo proves Defendants' knowledge that Shirocky had "last produced to sales in December 2016," "had become incapable of economic production," and "not capable of gas sales going forward," but nevertheless applied for "inactive status." Range did in fact seek inactive status for this well and falsely stated on the application that "significant reserves remain in place and I plan to return the well to production," going so far as to specify that the well would be returned to use in September 2022. ¶¶ 6, 33. The Shirocky Memo exemplifies the Company's knowledge that they intentionally misclassified abandoned wells as inactive.

The DEP indeed found that Range's applications for "inactive" status for Shirocky and forty-two other wells contradicted documents Defendants produced to the DEP, which proved that these wells "do not have future utility or significant reserves remaining in place" and "[s]ome of the Wells had not produced oil or natural gas for twelve consecutive months at the time of the Applications for Inactive Well Status." That Range's own documents contradicted the data they put in their DEP applications for inactive status creates a compelling inference of scienter.

#### d)     The CW Allegations Support an Inference of Scienter

The CW allegations support an inference of scienter. *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs.*, 497 F.3d 546, 552 (5th Cir. 2007) ("Confidential source statements are a permissible basis on which to make an inference of scienter."). CWs are properly pled where they are "'identified through general descriptions in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source as described would possess the information pleaded.'" *Barrie*, 397 F.3d at 259. This standard is satisfied by alleging "particular job descriptions, individual responsibilities, and specific employment dates for the

22

witnesses." *Cent. Laborers' Pension*, 497 F.3d at 552. The Complaint's CW allegations (¶¶ 30-37)[8] meet this standard by providing the CWs' "general descriptions of the employment duties" and "the dates that they were employed." *Wieland v. Stone Energy Corp.*, No. CIV.A. 05-2088, 2007 WL 2903178, at *5 (W.D. La. Aug. 17, 2007). The Complaint alleges cross-corroborating statements by numerous CWs establishing both recklessness (Defendant Ventura's heavy involvement in PA operations, his receipt of daily reports regarding the production status of each well (Defendants' argument that the CW allegations are "unrelated to any specific…wells," Def. Br. at 18, is thus nonsensical), and the Company's direction not to classify unproductive wells with no viable future use as abandoned to defer costly expenses, ¶¶ 31, 37) and motive (to avoid the exorbitant cost of plugging and to avoid losing cheap leaseholds, ¶¶ 30-31, set forth *infra,* and consistent with the DEP's findings, *see* §2.c.). The CW statements demonstrate that Defendants knew, or at minimum had access to, information contradicting their public statements and had motive to mislead the market. Defendants' argument that the CW allegations do not "concern any of the specific misstatements at issue…" therefore falls flat.[9] Def. Br. at 18. Moreover, contrary to Defendants' argument that the CW allegations are "unrelated to any specific time period," *Id.*, the Complaint identifies the CWs *precise dates of employment*, making clear that each worked at the Company *during the Class Period* when Defendants issued the alleged misstatements.

### e)   The SOX Certifications Support an Inference of Scienter

Defendants Ventura, Manny and Scucchi represented in each SEC filing that they had:

> [D]esigned such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, *is made known to us* by others within those entities, particularly

---

[8] Belying Defendants' baseless argument that Plaintiff did not allege the CWs job descriptions and responsibilities.

[9] As does their argument that only two paragraphs concern scienter. Their disregard of the Complaint's other scienter allegations, set forth herein, does not negate their existence.

during the period in which this report is being prepared. *See, e.g.,* ¶ 43.

These SOX certifications contribute to the inference of scienter.  *See In re Elec. Data Sys. Corp. Sec. & "ERISA" Litig.*, 298 F. Supp. 2d 544, 557 (E.D. Tex. 2004) (scienter alleged where defendants "represented to the SEC that they personally designed [the company's] internal control procedures to ensure that they were aware of all material financial information").  Although SOX certifications, "standing alone, [are] not indicative of scienter," scienter can be inferred where there are "facts establishing that the officer who signed the certification had a 'reason to know, or should have suspected, due to the presence of glaring accounting irregularities or "red flags," that the financial statements contained material misstatements or omissions.'" *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc*., 537 F.3d 527, 545 (5th Cir. 2008); *see also Singh,* 2017 WL 4322483, at *3; *In re ArthroCare Corp. Sec. Litig.,* 726 F. Supp. 2d 696, 724 (W.D. Tex. 2010).

Moreover, Defendants Manny, Ginn, Ventura and Scucchi – Range's top executives -- *each* signed the misleading SEC filings, further supporting the inference of their scienter. *Ramirez,* 334 F. Supp. 3d at 854 (defendants signing filings supported the inference of scienter); *In re NetSolve, Inc*., 185 F. Supp. 2d 684, 697 (W.D. Tex. 2001)(scienter pled where defendants were top officers/directors of NetSolve). Though insufficient on their own, Defendants' titles are another piece of the puzzle when taking a holistic view of the facts for purposes of scienter. *Fleming* , 2004 U.S. Dist. LEXIS 26488, at *33; *see also Singh*, 2017 U.S. Dist. LEXIS 160095, at *11.

Given their four-year spate of regulatory violations and having put themselves forth as knowledgeable regarding the Company's costs, expenses, and obligations to abandon and plug wells, regulatory compliance, and environmental proceedings, Defendants certainly had reason to know that their statements on these topics contained material misstatements or omissions.

### f)    Defendants' Motive Supports an Inference of Scienter

Defendants each had a clear motive to delay designating wells as abandoned.  "[M]otive

and opportunity allegations may meaningfully enhance the strength of the inference of scienter." *Flaherty & Crumrine Preferred Income Fund Inv. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009). Significantly, where a complaint alleges clear motive for alleged misstatements or omissions, the strength of its circumstantial evidence of scienter need not be as great. Cf. *R2 Invs.*, 401 F.3d at 644. Three CWs attested to the high costs of abandoning and plugging wells. ¶ 30. CW3 also explained that Defendants had an incentive to misclassify wells to hold on to cheap leaseholds. ¶ 31. These are not "generalized motive[s]," as Defendants argue, but rather specific to Range's business. Def. Br. at 19. The DEP also concluded that the Company acted *intentionally* when misclassifying the wells. This was not simply a case (or rather, forty-two cases) of "poor business judgment." *Id.* In the press release announcing the CACP, the DEP concluded that, "Range Resources used the inactive status period *to delay the eventual plugging of unproductive wells* without returning them to active status." ¶ 106. Motive is thus adequately pled.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. If, however, the Court is inclined to grant the motion, Plaintiffs respectfully request leave to further amend. *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477-78 (5th Cir. 2018).

Dated:  September 24, 2021                         Respectfully submitted,

                                                   **POMERANTZ LLP**

                                                   By: */s/ Tamar A. Weinrib*
                                                   Jeremy A. Lieberman (admitted *pro hac vice*)
                                                   Tamar A. Weinrib
                                                   600 Third Avenue, 20th Floor
                                                   New York, NY 10016

---

[10] Because a primary violation of §10(b) of the Exchange Act has been pled, the individuals who controlled those frauds – the Individual Defendants – are liable as control persons under §20(a).

Telephone: (646) 581-9973
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Lead Counsel for Plaintiff*

Willie C. Briscoe
**THE BRISCOE LAW FIRM**
12700 Park Central Drive, Suite 520
Dallas, TX 75251
Telephone: (972) 521-6868
Facsimile: (346) 214-7463
wbriscoe@thebriscoelawfirm.com

*Liaison Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

On September 24, 2021, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Tamar A. Weinrib*
Tamar A. Weinrib