UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HOWARD JACOBOWITZ, INDIVIDUALLY AND
ON BEHALF OF OTHERS SIMILARLY SITUATED,

Plaintiff,

v.                                                    No. 4:21-cv-0751-P

RANGE RESOURCES CORPORATION ET AL.,

Defendants.

## OPINION & ORDER

Before the Court is Defendants' Motion to Dismiss for Failure to
State a Claim ("Motion"). ECF No. 69. Having considered the Motion,
briefs, arguments of counsel, record, and applicable law, the Court will
**GRANT** the Motion (ECF No. 69); Jacobowitz's claims will therefore be
**DISMISSED with prejudice.**

### FACTUAL BACKGROUND[1]

Shareholder Howard Jacobowitz sued Range Resources Corporation
("Range") and four senior executives (together, "Defendants") for
allegedly committing securities fraud. He claims they made materially
false or misleading statements or failed to disclose material information
in securities filings and on Range's website. Am. Compl. ¶ 7. These
statements and omissions concerned the status and classification of
Range's oil wells, the related accounting, a state regulatory
investigation and fine, and Range's Code of Ethics. *Id.*

Specifically, Jacobowitz theorizes that Range's filings were rendered
materially false or misleading because Range misclassified 42 of its
1,272 wells in Pennsylvania's Appalachian Basin as "inactive" instead

---

[1]Unless otherwise stated the Court draws its factual account from Jacobowitz's
Amended Complaint. ECF No. 64, Am. Compl. *See Manguno v. Prudential Prop. &
Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that when considering a Rule
12(b)(6) motion to dismiss, "all facts pleaded in the complaint must be taken as true").

of "abandoned."[2] This classification is significant because "abandoned" wells must be "plugged" by the owner. Plugging wells entails permanently closing them off and rendering them incapable of further production. Misclassifying wells in Pennsylvania can also lead to the state government imposing civil penalties. Jacobowitz claims that from July 16, 2013, to October 11, 2017, Defendants knowingly misclassified the 42 wells to dodge plugging expenses and to maintain "tons of cheap [mineral] leases" that would otherwise be lost. *Id.* ¶¶ 31–32.

According to Jacobowitz, the trouble started for Range when it applied for inactive status on a well called Shirocky Unit #1. *Id.* ¶ 33. The application stated that "significant reserves remain in place and [the applicant planned] to return the well to production." *Id.* The application also contained Range's certification "that this well is of future utility and that significant reserves remain in place that Range intends to produce." *Id.* Range, however, inadvertently attached an internal memorandum ("Shirocky Memo") from September 2017 stating this well "had 'last produced to sales in December 2016,' 'had become incapable of economic production,' and was 'not capable of gas sales going forward.'" *Id.* ¶ 34. The Shirocky Memo indicated Range would "file for Inactive Status for this well," rather than seeking an "abandoned" classification. *Id.*

After receiving the Shirocky Memo, the Pennsylvania Department of Environmental Protection ("DEP") investigated Range's classifications practices. In November 2017, the DEP issued a subpoena for documents relating to wells for which Range had requested inactive status in the Appalachian Basin. *Id.* ¶ 35. At the end of its investigation, the DEP concluded that, from July 2013 to October 2017 ("Class Period"), Range

---

[2]A non-producing well may be classified as "inactive" if, *inter alia*, the applicant certifies that there is a "viable plan for utilizing the well within a reasonable time[,]" and the applicant certifies that "significant reserves remain in place and the operator plants to produce from the well" or identifies a use for the well. Am. Compl. ¶¶ 26–27 (quoting 25 Pa. Code § 78.102). These alternative uses include using the well for: disposal, storage, observation, or "for other purposes specified by the applicant." 25 Pa. Code § 78.102.

Conversely, a well may be classified as "abandoned" when it has not produced oil or gas for 12 consecutive months and cannot be identified as inactive. Am. Compl. ¶ 27; 58 Pa. Cons. Stat. § 3203.

misclassified 42 wells—slightly less than 1% of Range's wells in the region. *Id.* ¶ 32. On January 7, 2021, the DEP settled with Range and both parties signed a Consent Assessment of Civil Penalty ("CACP"). *Id.* ¶ 36. Per this CACP, Range paid a $294,000 civil penalty for its regulatory infractions. *Id.*

About one month later, on February 10, 2021, the DEP announced its settlement with Range in a press release. *Id.* ¶¶ 105, 107. This press release is the purported corrective disclosure upon which Jacobowitz's claims rely. *See id.* ¶¶ 105, 109. Range's stock price fluctuated both during and after this announcement. *Id.* ¶ 107. Specifically, Jacobowitz alleges that "as the market fully digested the significance of the DEP's announcement, Range's stock price fell $0.62 per share, or 6.08%, from its closing price on [the day of the press release], to close at $9.57 per share [the next day]."[3] *Id.* He frames this drop as a "precipitous decline in the market value of [Range's] securities[.]" *Id.* ¶ 108. Jacobowitz thus claims that Range's stock fluctuation was not merely correlated with the DEP's press release, but that the temporary drop in stock price was directly caused by this announcement.

Jacobowitz thus alleges that Defendants, with intent to deceive, defraud, or manipulate or with severe recklessness, misclassified Range's wells and hid that decision and the ensuing investigation from investors. This, he argues, rendered Range's securities filings from 2016 to 2020 as false or misleading. Defendants' pertinent statements and omissions appear in several places: Range's annual 10-K filings, its quarterly 10-Q filings, and its website.

Jacobowitz advances several theories in support of his claims. He argues that Range's securities disclosures were false or misleading because: (1) Range improperly classified wells; (2) Range failed to plug wells as required by Pennsylvania regulations; (3) Range's conduct

---

[3]Though Jacobowitz provides the closing share price for the day after the DEP's announcement, he omits inconvenient context for these figures. For instance, Range's stock price closed *up* on the day of the DEP's announcement—on February 10, 2021, Range's stock opened at $9.93 and closed at $10.19. As Jacobowitz notes, Range's stock price closed at $9.57 on February 11, 2021. But, as Jacobowitz neglects to mention, on February 12 and 13, 2021, Range's stock closed at $10.16 and $10.94, respectively. The Court takes judicial notice of these closing prices. *See* FED. R. EVID. 201.

exposed it to liability and "artificially decreased [its] periodically reported cost estimates to plug and abandon its wells"; and (4) a state agency investigated and fined Range for misclassifying wells. Am. Compl. ¶ 7. Jacobowitz relies heavily on confidential witnesses ("CWs") to support these claims. *Id.* ¶ 31, nn.1–4.

Defendants' Motion to Dismiss is fully briefed. The Court also heard oral arguments on the Motion. Order, ECF No. 80. The Motion is thus ripe for the Court's review.

## LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not, however, bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. If there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## B. Rule 9(b) Pleading Standard

Pleading private claims for securities fraud is difficult by design. Because Jacobowitz alleges Defendants committed securities fraud, his pleadings must satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). FED. R. CIV. P. 9(b).

Rule 9(b) requires that pleadings "state with particularity the circumstances constituting fraud or mistake." *See Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. Six Flags Ent. Corp.*, 524 F. Supp. 3d 501, 523 (N.D. Tex. 2021) (Pittman, J.) (quoting *Mun. Empls.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 429 (5th Cir. 2019)). Accordingly, "a plaintiff must 'identify the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (quoting *Tuchman v. DSC Commc'ns Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994)) (internal citation and alterations omitted).

## C. Pleading Standard Under the Private Securities Litigation Reform Act

Private securities fraud claims brought in federal court "must also comply with the strictures imposed by the Private Securities Litigation Reform Act ('PSLRA')." *Six Flags Ent. Corp.*, 524 F. Supp. 3d at 523 (citing 15 U.S.C. § 78u–4). "The PSLRA has raised the pleading bar even higher and enhances Rule 9(b)'s particularity requirement for pleading fraud in two ways." *Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017) (quoting *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 956 (5th Cir. 2016)); *see also* 15 U.S.C. § 78u–4(b)(1). "First, the plaintiff must specify each statement alleged to have been misleading." *Id.* (quoting *Diodes, Inc.*, 810 F.3d at 956). "Second, for each act or omission alleged to be false or misleading, plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." *Id.* (quoting *Diodes, Inc.*, 810 F.3d at 956); *see also* 15 U.S.C. § 78u–4(b)(2)(A). In sum, "the PSLRA requires a plaintiff to identify each allegedly misleading statement with particularity and explain why it is misleading." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir.

2009). At minimum, this incorporates the "who, what, when, where, and how" requirements of Rule 9(b). *See ABC Arbitrage Plantiffs Grp. v. Tchuruk,* 291 F.3d 336, 349–50 (5th Cir. 2002).

## ANALYSIS

### A. Jacobowitz's Securities Exchange Act § 10(b) Claims

The Court will first analyze Jacobowitz's claims brought under § 10(b) of the Securities Exchange Act. This analysis will introduce the elements for §10(b) claims, then address each of the categories of statements that Jacobowitz challenges. The Court will address whether Jacobowitz adequately pleaded facts showing that the challenged statements were materially false or misleading and whether these statements were made with the adequate scienter. For the reasons stated below, the Court ultimately concludes that Jacobowitz failed to adequately plead facts supporting his § 10(b) claims; these claims will thus be **DISMISSED with prejudice**.

#### 1. <u>Standard for § 10(b) of the Securities Exchange Act Claims</u>

Jacobowitz alleges that Range violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. To state a private securities fraud claim under on § 10(b) and Rule 10b-5, a plaintiff must plead facts under the heightened pleadings requirements that sufficiently allege each the following elements: (1) the defendant made a materially false or misleading statement, (2) the defendant did so with scienter, (3) the statement was made in connection with the purchase or sale of a security, (4) the plaintiff relied upon the statement, (5) economic loss, and (6) loss causation—i.e., a causal connection between the loss and the material misrepresentation. *Mun. Empls.' Ret. Sys. of Mich.*, 935 F.3d at 429 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

Thus, Jacobowitz must support each of these elements under the Rule 9(b) standard, which requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Even if misrepresentations or omissions are pleaded with sufficient

specificity and individualization, they must be *material* to properly state a claim. However, there is no bright-line rule for materiality. *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 616 (S.D. Tex. 2018) ("*Plains*"), *aff'd on other grounds sub nom., Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019). This analysis requires a fact-intensive inquiry into "the source, content, and context" of the allegedly misleading or omitted information. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 43 (2011). A representation is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). Omitted facts make a statement material only if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 747 (S.D. Tex. 2012) ("*BP I*") (citing *Basic Inc.*, 485 U.S. at 232.

Further, recent Supreme Court authority clarifies how trial courts should evaluate whether plaintiffs have alleged actionable statements of opinion. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). *Omnicare* provides "two potential avenues for plaintiffs to establish the falsity of an opinion." *Plains*, 307 F. Supp. 3d at 616. *First*, "every . . . statement [of opinion] explicitly affirms one fact: that the speaker holds the stated belief." *Omnicare*, 575 U.S. at 184. A speaker can be liable for an opinion statement if the speaker did not in fact hold that opinion. *See id. Second*, a reasonable investor could "understand an opinion statement to convey facts about the speaker's basis for holding that view." *Id.* at 176. That is, the speaker's opinion statement could "imply facts about [what kind of] inquiry the [speaker] conducted" or that knowledge [the speaker] had." *Id.* "And if the real facts are otherwise, but not provided, the opinion statement will mislead by omission." *Id.* "Reasonable investors understand that opinions sometimes rest on a weighing of competing facts; indeed, the presence of such facts is one reason why a [speaker] may frame a statement as an opinion, thus conveying uncertainty." *Id.* at 176–77. To state a claim based on an opinion, Jacobowitz must

therefore allege: "(i) the speaker 'omit[ted] material facts about the issuer's inquiry into or knowledge concerning a statement of opinion,' and (ii) 'those facts conflict with what a reasonable investor would take from the statement itself.'" *Plains*, 307 F. Supp. 3d at 634–35 (quoting *Omnicare*, 575 U.S. at 189).

Here, Jacobowitz alleges that several statements made in Range's annual 10-K and quarterly 10-Q filings, and on its website were categorically false. Jacobowitz argues several categories of statements serve as basis for his § 10(b) claims. These include Range's: (1) statements that it was in "substantial compliance" with relevant laws and regulations; (2) statements or omissions in filings ongoing legal proceedings; (3) statements and accounting calculations regarding its Asset Retirement Obligations; (4) online Code of Ethics; and (5)Sarbanes-Oxley certifications that were signed on Range's behalf by its President and CEO, and its former CFOs.

The Court will analyze the individual statements that fall within each of these categories.[4] Ultimately, the Court concludes Jacobowitz failed to sufficiently plead facts showing that any of the following statements provide an adequate basis for his § 10(b) claims.

2. <u>Range's "substantial compliance" statements are not actionable.</u>

Jacobowitz alleges that Range's recurring statements in its 10-Ks that it believed it was in "substantial compliance" with applicable laws and regulations were false or misleading. His § 10(b) claim for these statements rest on the premise that, because the DEP's investigation concluded that Range misclassified 42 wells as "inactive" instead of "abandoned," Range was not in fact in "substantial compliance" with relevant laws and regulations during the Class Period.

---

[4]Many of these statements appear in substantially the same form dozens of times in Range's quarterly and annual filings. It is undisputed that many of the challenged statements are "substantively the same" across Range's securities filings. *Compare* Defs.' Br. at 6 n.4, *with* Am. Compl. ¶ 45. For the sake of judicial efficiency, the Court will analyze and rule upon the substance of these statements and will cite to the portions of the record where these statements appear in substantially the same language.

a. *Challenged Statement*

**Statement One:** Jacobowitz alleges the bolded language from Range's 10-K filings is actionable under § 10(b). The statement is set out in its full context, as it appeared in those materials, not as it is excerpted in the Amended Complaint:

> Exploration and development and the production and sale of oil and gas are subject to extensive federal, state and local regulations. An overview of these regulations is set forth below. **We believe we are in substantial compliance with currently applicable laws and regulations and the continued substantial compliance with existing requirements will not have a material adverse effect on our financial position, cash flows or results of operations.** However, current regulatory requirements may change, currently unforeseen environmental incidents may occur or past non-compliance with environmental laws or regulations may be discovered.

2016-K, Defs.' App. 39; Am. Compl. ¶ 53.[5]

b. *Materially False or Misleading*

Jacobowitz argues this bolded language is materially false or misleading. He asserts that Defendants "misled investors and failed to disclose" that: (1) they misclassified wells as "inactive" instead of "abandoned"; (2) they failed to plug abandoned wells in accordance with state regulations; (3) by misclassifying and failing to plug wells, Range was exposed to reputational risk and risk of regulatory scrutiny; and (4) Range artificially decreased its periodically reported cost estimates to plug and abandon its wells. *Id.* Jacobowitz argues that, for these reasons, Statement One about Range's substantial compliance with relevant laws and regulations is actionable under § 10(b).

Defendants characterize Statement One as a general comment on Range's belief that it was in substantial compliance, and it is neither materially false nor misleading. ECF No. 71, Defs.' Br. at 6–9. This is especially true, they argue, because of the qualifying and hedging

---

[5]This statement or omission appears in Range's following disclosures: 2017 10-K, Defs.' App. 104, Am. Compl. ¶ 66; 2018 10-K, Defs.' App. 169, Am. Compl. ¶ 82; 2019 10-K, Defs.' App. 238, Am. Compl. ¶ 94.

language that accompanied the bolded text—language that Jacobowitz omitted from his recitation of Range's filings. *Id.*; *see* Am. Compl. ¶ 53.

For support, Defendants rely on an analogous case involving a company whose securities filings included a statement on "substantial compliance" that tracks closely with Statement One. *See Plains*, 307 F. Supp. 3d at 635. In *Plains*, a pipeline company stated in its securities filings that it "believe[d] [its] pipelines [were] in substantial compliance with all [relevant] federal, state and [national] requirements." *Id.* The court reasoned a "reasonable investor would not understand [from these] high-level, general statements in the filings, that [the company] was operating in substantial compliance with regulatory requirements, as implicitly assuring absolute compliance . . . ." *Id.* The *Plains* court instead held that a "reasonable investor would understand the use of 'hedges and disclaimers,' [like] 'substantial compliance,' and would not reasonably infer that [the company] had fully complied with every regulation or requirement." *Id.*

Defendants thus argue that Statement One was not rendered false or misleading by Range settling with the DEP or paying a $294,000 civil fine. Defs.' Br. at 7. Nor does Range's purported misclassification of "a small percentage" of its wells—here, less than 1%—mean it committed securities fraud. *Id.* (quoting *Plains*, 777 F. App'x at 731).

The Court agrees with Defendants. Jacobowitz failed to adequately plead facts showing that Statement One was false or misleading. Contrary to Jacobowitz's contention, Range's settlement with the DEP and its subsequent payment of a relatively minor civil penalty does not render false or misleading its prior statements that it believed it was in "substantial compliance" with relevant regulations. Nor did Jacobowitz sufficiently plead that this porous Statement would be rendered false or misleading by Range misclassifying a fraction of its wells. The Court thus concludes this Statement is not actionable under § 10(b).

### c. Materiality

Jacobowitz further failed to adequately plead that any reasonable investor would rely on Statement One, and thus failed to plead this Statement was material. As was true in *Plains*, no reasonable investor

would understand Range's hedged and qualified statement as a guarantee of absolute compliance with the law. That Statement One was "framed by acknowledgements of the complexity and numerosity of applicable regulations . . . suggests caution (rather than confidence) regarding the extent of [Range]'s compliance." *Singh v. Cigna Corp.*, 918 F.3d 57, 64 (2d Circ. 2019) (affirming dismissal of similar allegations).

Here, the text surrounding the bolded language in Statement One cautioned investors that "past non-compliance with environmental laws or regulations may be discovered." Am. Compl. ¶ 53; Defs.' App. 39. These "overlapping hedges and qualifications would inform a reasonable investor's understanding that [Range] could express only an opinion that it was operating in substantial—not perfect, complete, or consistent—compliance with the relevant laws." *Plains*, 307 F. Supp. 3d at 635. Evaluated in context, Range's statements imbue a reasonable investor with caution, rather than "implicitly assuring absolute compliance." *Id.* at 635. The Court thus concludes that Jacobowitz failed to adequately plead facts showing a reasonable investor would consider Statement One important in making an investment decision. Thus, even if the Court had concluded this Statement was false or misleading, the Court nonetheless concludes that this Statement is immaterial. This provides an independent basis for dismissing Jacobowitz's claim.

### d. Opinion

This claim faces another hurdle because, as Defendants argue, Statement One is a statement of opinion, rather than of fact. Defendants argue that Statement One contains "hedging" language that Range "believe[d]" that it was in "substantial compliance" with applicable laws. *See* Defs.' Br. at 8–10. These qualifiers, they argue, make Statement One statement of opinion or belief that is thus subject to the higher bar in the *Omnicare* analysis. *Id.* The Court does not necessarily adopt Defendants' characterization of Statement One as "pure opinion." *See* Defs.' Br. at 9–10. The Court agrees in principle with Jacobowitz's argument that "Defendants cannot escape liability simply by using the words 'we believe' when promising 'substantial compliance.'" ECF No. 72, Pl.'s Resp. at 12 (citing *Omnicare*, 575 U.S. at 193) ("Those magic words can preface nearly any conclusion, and the resulting statements,

as we have shown, remain perfectly capable of misleading investors."). But taken in context, the Court concludes Statement One is properly construed as an opinion statement, rather than an unambiguous statement of fact.

To determine whether an opinion statement is misleading, courts "must address the statement's context" by taking "account of whatever facts [the defendant] *did* provide about legal compliance, as well as any other hedges, disclaimers or qualifications it included in its registration statement." *Omnicare*, 575 U.S. at 196–97 (emphasis in original). The issue thus turns on whether Jacobowitz adequately alleged that: "(i) the speaker 'omit[ted] material facts about the issuer's inquiry into or knowledge concerning a statement of opinion,' and (ii) 'those facts conflict with what a reasonable investor would take from the statement itself.'" *Plains*, 307 F. Supp. 3d at 634–35. (quoting *Omnicare*, 575 U.S. at 189).

Jacobowitz fails on both prongs of analysis. *First*, he fails to adequately allege facts showing that Range omitted material facts about its inquiry into or knowledge about its Statement. Range instead cautioned investors that it was "the subject of, or party to, a number of pending and threatened legal actions," Defs.' App. 127, and that "past non-compliance with environmental laws or regulations may be discovered." Defs.' App. 39. *Second*, the Court concludes that, like in *Plains,* Range's "overlapping hedges and qualifications would inform a reasonable investor's understanding that [Range] could express only an opinion that it was operating in substantial—not perfect, complete, or consistent—compliance with the relevant laws." *See Plains*, 307 F. Supp. 3d at 635. Viewed in context as an opinion statement, the Court thus concludes that Jacobowitz's failed to plead facts showing that Statement One is actionable. *See Omnicare*, 575 U.S. at 189.

3. Range's statements on pending legal issues are not actionable.

Jacobowitz next challenges two interrelated statements about ongoing legal matters that Range made in its annual and quarterly filings. He first challenges a general statement about ongoing or potential legal proceedings in which Range was involved.

*a. Challenged Statements*

**Statement One:**

> We are the subject of, or party to, a number of pending or threatened legal actions and claims arising in the ordinary course of our business. While many of these matters involve inherent uncertainty, we believe that the amount of the liability, if any, ultimately incurred with respect to proceedings or claims will not have a material adverse effect on our consolidated financial position as a whole or on our liquidity, capital resources or future annual results of operations. We will continue to evaluate our litigation quarterly and will establish and adjust any litigation reserves as appropriate to reflect our assessment of the then-current status of litigation.

2017 10-K, Defs.' App. at 127; Am. Compl. ¶ 67.[6]

**Statement Two:** The second statement involved an unrelated regulatory investigation Range faced in Lycoming County concerning a potential well leak. Jacobowitz alleges that Range's disclosures omitted reference to the DEP investigation into the 42 wells[7] and thus failed to apprise investors of this investigation, including the possibility of fines. This is problematic, he contends, because Range specifically disclosed the unrelated DEP investigation into the Lycoming County well.

> Our subsidiary, Range Resources – Appalachia, LLC, was notified by the Pennsylvania Department of Environmental Protection ("DEP"), in second quarter 2015, that it intends to assess a civil penalty under the Clean Streams Law and the 2012 Oil and Gas Act in connection with one well in Lycoming County. The DEP has directed us to prevent methane and other substances from escaping from this gas well into groundwater and a stream. We have considerable evidence that this well is not leaking and pre-drill testing of surrounding water wells showed the presence of methane in the water before commencement of our operations. While we intend to vigorously assert this

---

[6]This statement or omission appears in Range's following disclosures: 2017 10-K, Defs.' App. 104, Am. Compl. ¶ 66; 2018 10-K, Defs.' App. 169, Am. Compl. ¶ 82; 2019 10-K, Defs.' App. 238, Am. Compl. ¶ 94.

[7]This statement or omission appears in Range's following disclosures: 2018 10-K, Defs.' App. at 194, Am. Compl. ¶ 82; 2019 10-K, Defs.' App. at 262, Am. Compl. ¶ 94.

position with the DEP, resolution of this matter may nonetheless result in monetary sanctions of more than $100,000.

2Q2018 10-Q, Defs.' App. at 152; Am. Compl. ¶ 73.[8]

Jacobowitz contends that, by disclosing the Lycoming County matter and not disclosing the DEP investigation into the 42 wells, Range's securities filings were rendered actionable under federal securities fraud law. As shown below, the Court disagrees.

### b. False or Misleading Statement

Jacobowitz claims Statements One and Two are actionable because Range failed to disclose the DEP's investigation into the potential misclassification of the 42 wells. Am. Compl. ¶ 67. The crux of this claim is that, by disclosing the Lycoming County investigation but omitting the inquiry into Range's well classification practices, Range's securities disclosures were rendered false or misleading. *Id.* Jacobowitz repeatedly and incorrectly claims, however, that Range's disclosures stated the Lycoming County investigation from Statement Two was "the ***only*** environmental proceeding" that could "result in monetary sanctions of more than $100,000." *Id.* ¶¶ 68, 73, 76, 82, 85, 86, 88, 94, 97, 99, 101 (emphasis added); *see also* Pl.'s Resp. at 14 ("Defendants purported to disclose ***all*** environmental proceedings but did not disclose the DEP investigation into Ranges [sic] well designations.") (emphasis added).

A review of the disclosures shows that Jacobowitz mischaracterizes these Statements. Rather, Range's disclosures included the generalized warning in Statement One about "pending or threatened legal actions and claims" that Range believed would ultimately "not have a material adverse effect on [its] consolidated financial position." Defs.' App. 127. This warning was immediately followed by Statement Two, which

---

[8]Jacobowitz alleges that Range's statements in the following disclosures—which are substantially similar to the quoted statement—are also actionable: 2017 10-K, Defs.' App. at 127, Am. Compl. ¶ 67; 3Q2018 10-Q, Defs'. App. at 162, Am. Compl. ¶ 76; 2018 10-K, Defs.' App. at 194, Am. Compl. ¶ 82; 1Q2019 10-Q, Defs.' App. at 210, Am. Compl. ¶ 85; 2Q2019 10-Q, Defs.' App. at 221, Am. Compl. ¶ 86; 3Q2019, Defs.' App. at 231, Am. Compl. ¶ 88; 2019 10-K, Defs.' App. at 262, Am. Compl. ¶ 94; 1Q 2020, Defs.' App. at 282, Am. Compl. ¶ 97; 2Q2020 10-Q, Defs.' App. at 292, Am. Compl. ¶ 99; and 3Q2020 Defs.' App. at 303, Am. Compl. ¶ 101.

provided a specific instance of an unrelated DEP inquiry into one of Range's wells that was ostensibly leaking in Lycoming County. *Id.*

Importantly, these Statements do not claim that the Lycoming County incident was the *only* environmental proceeding in which Range was involved. *Id.* In fact, nowhere in the "Legal Proceedings" section of its securities filings does Range claim it exhaustively listed every legal or regulatory proceeding in which it was engaged. *See id.* Thus, a key piece of Jacobowitz's claim is missing.

Jacobowitz therefore frames the Statements too restrictively, and his lofty argument that Range was obligated to "speak the full truth" is ultimately misguided. Pl.'s Resp. at 22 (quoting *Lormand*, 565 F.3d at 249). By adding the word "only" into Range's filings, Jacobowitz attempts to dramatically alter the meaning and implications of these Statements. Without that crucial word of exclusivity, Jacobowitz's *expression-unius-est-exclusio-alterius* argument falls flat. It does not follow that Range, by disclosing *one* proceeding, was then obligated to disclose *every* legal and regulatory proceeding in which it was involved. To hold otherwise would transform routine securities disclosures into a corporate rite of confession.

Contrary to Jacobowitz's arguments, corporations have no duty to disclose a fact "merely because a reasonable investor might really like to know that fact." *Six Flags Ent. Corp.*, 524 F. Supp. 3d at 529 (citing *Berger v. Beletic*, 248 F. Supp. 2d 597, 603 (N.D. Tex. 2003) (internal citation omitted)). Under § 10(b), such disclosures are required "when silence would make other statements misleading or false." *Id.* In context and without including the word "only," Range's disclosing information on one investigation but not another does not render the Statements false or misleading. *See id.* This is especially true because Range's disclosures refute this exclusionary reading by warning investors that it was subject to "a number of pending or threatened legal actions." Defs.' App. 127. The Court therefore concludes that the Amended Complaint fails to adequately plead facts showing that these Statements are actionable under § 10(b).

### c. Materiality

This claim also fails under the materiality analysis. A representation is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *Plains*, 307 F. Supp. 3d at 615. Similarly, omitted facts make a statement material only if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (quoting *BP I*, 843 F. Supp. 2d at 747).

The DEP's investigation inquired into Range's potential misclassifications of a tiny percentage of its wells—less than 1% of Range's wells at the time. And the $294,000 civil penalty that the DEP ultimately imposed is miniscule given the scope of Range's business. *See, e.g.*, *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 35 (E.D.N.Y. 2021) ($11 million increase in liability immaterial in context a company with $39.1 billion in assets and more than $3.4 billion in annual revenue); *see also In re Lions Gate Ent. Corp. Sec. Litg.*, 165 F. Supp. 3d 1, 13 (S.D.N.Y 2016) ($7.5 million civil penalty immaterial in context of company's revenue). Range's assets are valued at more than $6 billion, and it had $2.8 billion in total revenue and income in 2019. *See* Defs.' Br. at 11; Defs.' App. 267. Even if Jacobowitz properly pleaded facts showing these Statements were false or misleading (which he did not), he failed adequately plead facts supporting the materiality element. This provides an independent basis for dismissing his claim.

### 4. Range's statements regarding Asset Retirement Obligations are not actionable.

The Court next considers Jacobowitz's claims stemming from Range's Asset Retirement Obligation ("ARO") financial statements. AROs are accounting line-items that reflect accountants' estimates of future costs associated with retiring assets, like wells. These include, for instance, "the estimated present value of the amounts [Range] will incur to plug, abandon and remediate [its] producing properties at the end of their productive lives." Am. Compl. ¶ 42. Range's annual and quarterly securities filings identified its long-term estimate for the relevant period; these estimates naturally fluctuate by tens of millions of dollars

from one period to the next. Defs.' Br. at 13.

### a. *The Challenged Statements*

**Statement One:**

> Our asset retirement obligations primarily represent the estimated present value of the amounts we will incur to plug, abandon and remediate our producing properties at the end of their productive lives. Significant inputs used in determining such obligations include estimates of plugging and abandonment costs, estimated future inflation rates and well lives. The inputs are calculated based on historical data as well as current estimated costs.

1Q2016 10-Q, Defs.' App. at 4; Am. Compl. ¶ 42.[9]

**Statement Two:**

> We have significant obligations to remove tangible equipment and restore the surface at the end of natural gas and oil production operations. Removal and restoration obligations are primarily associated with plugging and abandoning wells.

2016 10-K, Defs.' App. 60; Am. Compl. ¶ 49.[10]

**Statement Three:** Jacobowitz next alleges that Range's statements regarding its long-term AROs and expenses for "abandonment and impairment of unproved properties" are actionable under § 10(b). Range

---

[9]Jacobowitz alleges that Range's statements in the following disclosures—which are substantially the same statement regarding how the company accounted for its AROs—are also actionable: 2Q2016 10-Q, Defs.' App. at 14, Am. Compl. ¶ 45; 2Q2016 10-Q, Defs.' App. at 14, Am. Compl. ¶ 45; 3Q2016 10-Q, Defs.' App. at 25, Am. Compl. ¶ 47; 2016 10-K, Defs.' App. at 64, Am. Compl. ¶ 49; 1Q2017 10-Q, Defs.' App. at 71–72, 75, Am. Compl. ¶ 56; 2Q2017 10-Q, Defs.' App. at 82, 85–86, Am. Compl. ¶ 58; 3Q2017 10-Q, Defs.' App. at 93, 96, Am. Compl. ¶ 60; 3Q2017 10-Q, Defs.' App. at 93, Am. Compl. ¶ 60; 2017 10-K, Defs.' App. at 131, Am. Compl. ¶ 62; 1Q2018 10-Q, Defs.' App. at 138, Am. Compl. ¶ 71; 2Q2018 10-Q, Defs'. App. at 148, Am. Compl. ¶ 73; 3Q2018 10-Q, Defs.' App. at 158, Am. Compl. ¶ 76; 2018 10-K, Defs.' App. at 199, Am. Compl. ¶ 78; 1Q2019 10-Q, Defs.' App. at 206, Am. Compl. ¶ 85; 2Q2019 10-Q, Defs.' App. at 216, Am. Compl. ¶ 86; 3Q2019 10-Q, Defs.' App. at 227, Am. Compl. ¶ 88; 2019 10-K, Defs.' App. at 270, Am. Compl. ¶ 90; 1Q2020 10-Q, Defs.' App. at 277, Am. Compl. ¶ 97; 2Q2020 10-Q, Defs.' App. at 288, Am. Compl. ¶ 99; and 3Q2020 10-Q, Defs.' App. at 298, Am. Compl. ¶ 101.

[10]Jacobowitz alleges that Range's statements in the following disclosures—which are substantially the same as this quoted language—are also actionable: 2017 10-K, Defs.' App. 129, Am. Compl. ¶ 63; 2018 10-K, Defs.' App. 196, Am. Compl. ¶ 80; and 2019 10-K, Defs.' App. 264, Am. Compl. ¶ 92.

made these statements on a quarterly basis in its 10-Q filings from 1Q 2016 to 3Q 2020. The 10-Q disclosures reflect the aggregate long-term AROs that accrued up to that point in the year (the 1Q 10-Qs reflect the first three months of the year, the 2Q 10-Qs reflect the first six months, and the 3Q 10-Qs reflect the first nine months). Then, the annual 10-K disclosures reflect the aggregate long-term AROs for the full year. These statements are substantially similar in form, though the amounts and relevant time periods differ from one disclosure to the next.[11]

> For the quarter, Range reported that its long-term AROs for the three months ended March 31, 2016, amounted to $248.694 million. Range also reported its expenses for "abandonment and impairment of unproved properties" were $10.6 million.

10-Q 1Q2016, Defs.' App. 7; Am. Compl. ¶ 42.[12]

**Statement Four:** Jacobowitz next alleges that Range's statements regarding changes in its annual, existing ARO balances are actionable. These statements are substantially similar in form, though the amounts, percentages, whether the balance increased or decreased, and the relevant time periods differ from one disclosure to the next.[13]

---

[11]The Court will provide a representative example of these statements and cite the record for the other allegedly actionable statements. But for the sake of judicial efficiency, the Court will not provide a detailed breakdown of the amounts and timelines of the alleged disclosures for each and every statement; these materials may be found in the portions of the record cited in the corresponding footnote.

[12]Jacobowitz alleges that Range's statements in the following disclosures—which are substantially the same statement regarding how the company accounted for its AROs, though for different amounts and time periods—are also actionable: 2Q2016 10-Q, Defs.' App. at 14, 018, Am. Compl. ¶ 45; 3Q2016 10-Q, Defs.' App. at 25, 28, Am. Compl. ¶ 47; 2016 10-K, Defs.' App. at 59, 64, Am. Compl. ¶ 49; 1Q2017 10-Q, Defs.' App. at 71–72, 75, Am. Compl. ¶ 56; 2Q2017 10-Q, Defs.' App. at 82, 85–86, Am. Compl. ¶ 58; 3Q2017 10-Q, Defs.' App. at 93, 96, Am. Compl. ¶ 60; 2017 10-K, Defs.' App. at 131, Am. Compl. ¶ 62; 1Q2018 10-Q, Defs.' App. at 138, 141, Am. Compl. ¶ 71; 2Q2018 10-Q, Defs.' App. at 148, 151, Am. Compl. ¶ 73; 3Q2018 10-Q, Defs.' App. at 158, 161, Am. Compl. ¶ 76; 2018 10-K, Defs.' App. at 199, Am. Compl. ¶ 78; 1Q2019 10-Q, Defs.' App. at 206, 209, Am. Compl. ¶ 85; 2Q2019 10-Q, Defs.' App. at 216–17, 220, Am. Compl. ¶ 86; 3Q2019 10-Q, Defs.' App. at 227, 230, Am. Compl. ¶ 88; 2019 10-K, Defs.' App. at 270, Am. Compl. ¶ 90; 1Q2020 10-Q, Defs.' App. at 277, Am. Compl. ¶ 97; 2Q2020 10-Q, Defs.' App. at 288, Am. Compl. ¶ 99; 3Q2020 10-Q, Defs.' App. at 298, Am. Compl. ¶ 101.

[13]The Court will provide a representative example of these statements and cite to the record for the other allegedly actionable statements. But for the sake of judicial efficiency, the Court will not provide a detailed breakdown of the amounts figures in

During 2016, we decreased our existing ARO by $26.8 million or approximately 10% of the ARO balance at December 31, 2015 [that] was primarily due [to] a decrease in our estimated costs to plug and abandon certain wells in Pennsylvania.

2016 10-K, Defs.' App. 60; Am. Compl. ¶ 51.[14]

### b. *False or Misleading*

Jacobowitz pleads a weak, almost incoherent argument that Statements One through Four are actionable under § 10(b). His primary argument is a conclusory assertion that Range "artificially decreased" its reported cost estimates by knowingly misclassifying the wells. *See* Am. Compl. ¶ 44.

Defendants argue that Jacobowitz's pleadings failed to identify any basis for contending that Range's accounting was erroneous, much less that it was knowingly fraudulent. Defs.' Br. at 14. They argue he failed to plead facts that: identify or quantify any discrepancy in operational costs of the DEP settlement; link the costs of plugging the wells at issue to the AROs; or suggest that Range estimated its AROs improperly. *Id.* Thus, Defendants argue, Jacobowitz failed to allege that costs associated with the wells impacted Range's AROs, or that any such costs rendered Range's AROs materially inaccurate. *Id.* For further support, they also note that Range made no restatement of its financials after the DEP settlement. *Id.* Nor does Jacobowitz acknowledge that Range's financial statements were independently audited by Ernst & Young, LLP. Defs.' App. 61.

Rather than earnestly engage with the substance of Defendants' arguments, Jacobowitz complains that they are holding him to an "unreasonable burden." Pl.'s Resp. at 17. This comes in response to Defendants' assertion that he failed to plead any detail about why Range's accounting is supposedly false. *See id.* It is not Defendants holding him to this standard; rather, it is federal securities fraud law.

---

the disclosures for each and every statement; these numbers may be found at the portions of the record cited in the following footnote.

[14]2017 10-K, Defs.' App. at 131, Am. Compl. ¶ 63; 2018 10-K, Defs.' App. at 196, Am. Compl. ¶ 79; 2019 10-K, Defs.' App. at 264, Am. Compl. ¶ 91

Under the PSLRA and Rule 9(b), plaintiffs must do more than cite "particular statements from . . . financial reports, and allege[] variously that they were 'materially false and misleading as such amounts were improperly inflated,' were 'made without a reasonable basis,' and were 'inaccurate' due to the fraudulent accounting procedures." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 522 (5th Cir. 1993). As this Court has previously held, to "state an accounting claim under the heightened pleading standards set forth by the PSLRA, a plaintiff must allege specifically how much revenue was overstated, how that amount was determined, and why the defendants were required to report revenue differently." *Six Flags Ent. Corp.*, 524 F. Supp. 3d at 529 (citing *Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 465–66 (N.D. Tex. 2018)). Jacobowitz's Amended Complaint does not come close to satisfying this pleading requirement.

Here, Jacobowitz "make[s] no attempt to estimate by how much the earnings were inflated," and provides "no standard of comparison to what the correct numbers would have been." *See Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 536 (5th Cir. 2008). He failed to plead with particularity any facts showing why Range's AROs were incorrect, by what amount they were off, what the correct figures would be, or why Range should have reported differently. Jacobowitz thus fails to adequately plead facts showing Statements One through Four were false or misleading, as required by § 10(b).

### c. *Materiality*

Even if Jacobowitz satisfied the first prong of analysis, this claim fails under the materiality analysis. Range made qualifying and hedging statements with its ARO assessment that would instill a reasonable investor with a healthy degree of skepticism about the AROs' exact precision. *See, e.g.*, Defs.' App. 60. Specifically, Range explained that its ARO assessment required that it "make estimates and judgments," and "[i]nherent in the fair value calculation are numerous assumptions and judgments including the ultimate retirement costs, inflation factors, credit-adjusted discount rates, timing of retirement, and changes in the legal, regulatory, environmental and political environments." *Id.* The Court concludes that Jacobowitz failed to plead facts with particularity

such that a reasonable investor would find ostensible differentials in Range's ARO reporting to be material. This provides an independent basis to dismiss Jacobowitz's claims for these Statements.

5. <u>Range's statements in its Code of Ethics are not actionable.</u>

Jacobowitz's next § 10(b) claim stems from Range's unattributed statements in its Code of Ethics that were published on Range's website. Range's filings stated that "[i]nformation contained on or connected to our website is not incorporated by reference into this Form 10-K and should not be considered part of this report of any other filing we make with the SEC." Defs.' Br. at 15 n.9; Defs.' App. 35.

   *a. Challenged Statements*

**Statement One:**

> It is the policy of Range that we will conduct business in accordance with all applicable federal, state and local laws and regulations, as well as applicable laws and regulations of foreign jurisdictions, and in a manner that will always reflect a high standard of ethics. The laws and regulations applicable to Range are far reaching and complex. Compliance with the law does not comprise our entire ethical responsibility; rather, it is a minimum, essential condition for performance of our duties.

Code of Ethics; Am. Compl. ¶ 38.

**Statement Two:**

> As set forth in the previous section, it is the policy of Range to conduct business in compliance with all applicable laws and regulations, including but not limited to, those relating to environmental protection and regulatory requirements. In addition to compliance with these requirements, Range is committed to being a steward of the environment in all areas in which we operate. All Range employees, regardless of their role, are expected to perform their assigned duties within the scope of the law and in compliance with environmental laws and regulations.

Code of Ethics; Am. Compl. ¶ 38.

**Statement Three:**

> [Range's] core values—performance, innovation integrity and transparency—guide us in the work we do every day

21

as a natural gas industry leader. These values reflect how we operate as a company and are deeply rooted in our commitment to improving the communities where we work.

Code of Ethics; Am. Compl. ¶ 40.

**Statement Four:**

Our performance is driven by the company's commitment to act with integrity in everything we do, from principled business decision-making to community partnerships. We are deeply connected to the communities we serve and work every day to operate in a manner that meets or exceeds the expectations of our stakeholders.

Code of Ethics; Am. Compl. ¶ 40.

**Statement Five:**

Transparency and accountability to our shareholders, while supporting greater employee, community and partner confidence and engagement, is at the core of our culture. We actively work to ensure Range stakeholders have insight into our operations, as well as our contributions to the economy, the environment and the communities where we operate. We solicit actionable input and implement recommendations from community partners and always seek opportunities to further improve.

Code of Ethics; Am. Compl. ¶ 40.

*b. Materially False or Misleading*

Jacobowitz pleads that these general, unattributed statements from Range's online Code of Ethics and statement of its "values" are actionably fraudulent under federal securities law. *See* Am. Compl. ¶ 38. Jacobowitz essentially argues that these Statements were false or misleading because Range failed to disclose the DEP investigation into Range's well classifications. *Id.* ¶ 39. Jacobowitz argues that Defendants chose "profit over ethics and legality" by misclassifying the wells. Pl.'s Resp. at 12.

Defendants argue that Jacobowitz failed to plead any facts showing these general, aspirational statements are false or misleading. Defs.' Br. at 16. They also argue he failed to plead facts showing these statements

about Range's integrity, transparency, and responsibility are anything more than mere "puffery that a reasonable investor would not rely on." *Id.* (citing *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 902 (5th Cir. 2018) (affirming dismissal of securities claims based on code of ethics). Thus, Defendants argue that a reasonable investor would not judge Range's value or rely on self-serving statements from its website when making investing decisions. *Id.*; *see also In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 861 (S.D. Tex. 2016) ("[C]ourts have recognized that statements in such documents are immaterial puffery.").

Jacobowitz's Response relies on an unpublished, distinguishable case for the idea that code of ethics statements are not *necessarily* puffery. *See* Pl.'s Resp. at 13, 14, 16 (citing *Bach v. Amedisys, Inc.*, No. 10-00395-BAJ-RLB, 2016 WL 4443177 (M.D. La. Aug. 19, 2016)). But the compliance statements he cites in *Bach* differ greatly from those presented here. *See id.* at *10. The statements in *Bach* involve specific, factual statements by an executive on an investor call that were made specifically "to reassure investors of the Company's compliance program with specific reference to many of the fraudulent practices alleged in [that] suit." *Id.* Here, by contrast, Jacobowitz cherry-picked, general statements on Range's website that were not offered in response to any particular concerns. His Response otherwise largely fails to address Defendants' briefing on analogous caselaw where courts routinely dismiss similar code-of-ethics claims.

The Court thus concludes that Statements One through Five are not actionable under § 10(b). Companies' codes of ethics are inherently aspirational, and these statements rarely "go beyond aspirational or general puffery" or "falsely represent a record of past or present compliance" with Range's policies. *See Plains*, 307 F. Supp. 3d at 625 (quoting *In re Braskem S.A. Sec. Litig., 2*46 F. Supp. 3d 731, 756 (S.D.N.Y. 2017)). Nor are these statements specific or objective factual representations, much less "unambiguous representations." *Id.* at 626. Rather, these "generalized positive statements" are nothing more than mere "corporate cheerleading" and cannot provide a basis for liability under § 10(b). *Id.* at 615 (quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419 (5th Cir. 2001)). "[N]o reasonable investor would consider such

statements material and . . . investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts." *Id.* (quoting *BP I*, 843 F. Supp. 2d at 748). Thus, Statements One through Five are mere aspirational puffery and are not actionable securities fraud. Jacobowitz's Code of Ethics claims will accordingly be dismissed.

6. Range's Sarbanes-Oxley Act disclosures are not actionable.

Jacobowitz next claims that statements made in certifications attached to Range's 10-Q filings are actionable under § 10(b). These certifications were made pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") and were signed by Defendant Ventura and either Defendant Manny or Defendant Scucchi, depending on the filing.

*a. Challenged Statements*

**Statement One:**

> [The signors certify that the pertinent 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934 [and that the] information contained in the [respective 10-Q] fairly presents, in all material respects, the financial condition and results of operations of [Range].

10-Q 1Q 2016, Defs.' App. 9, 10; Am. Compl. ¶ 43.[15]

---

[15]Jacobowitz alleges that the statements in the following certifications—which are substantially the same in substance to the quoted language, though for different time periods—are also actionable. The following certifications were signed by Defendants Ventura and Manny: 2Q2016 10-Q, Defs.' App. at 20, 21, Am. Compl. ¶ 45; 3Q2016 10-Q, Defs.' App. at 30, 31, Am. Compl. ¶ 47; 2016 10-K, Defs.' App. at 66, 67, Am. Compl. ¶ 54; 1Q2017 10-Q, Defs.' App. at 77–78, Am. Compl. ¶ 56; 2Q2017 10-Q, Defs.' App. at 88–89, Am. Compl. ¶ 58; 3Q2017 10-Q, Defs.' App. at 98–99, Am. Compl. ¶ 60; 2017 10-K, Defs.' App. at 133–34, Am. Compl. ¶ 69; 1Q2018 10-Q, Defs.' App. at 143–44, Am. Compl. ¶ 71.

The following certifications were signed by Defendants Ventura and Scucchi: 2Q2018 10-Q, Defs.' App. at 153–54, Am. Compl. ¶ 74; 3Q2018 10-Q, Defs.' App. at 163–64, Am. Compl. ¶ 76; 2018 10-K, Defs.' App. at 201–02, Am. Compl. ¶ 83; 1Q2019 10-Q, Defs.' App. at 211–12, Am. Compl. ¶ 85; 2Q2019 10-Q, Defs.' App. at 222–23, Am. Compl. ¶ 86; 3Q2019 10-Q, Defs.' App. at 232–33, Am. Compl. ¶ 88; 2019 10-K, Defs.' App. at 272–73, Am. Compl. ¶ 95; 1Q2020 10-Q, Defs.' App. at 284–84, Am. Compl. ¶ 97; 2Q2020 10-Q, Defs.' App. at 293–94, Am. Compl. ¶¶ 99; 3Q2020 10-Q, Defs.' App. at 304–05, Am. Compl. ¶ 101.

**Statement Two:**

> [The signors certify that they] designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared.

10-Q 1Q2016 App. 9, 10; Am. Compl. ¶ 43.[16]

### b. *Materially False or Misleading*

Jacobowitz argues the Individual Defendants[17] signed these SOX certifications and attested that Range's financial statements were accurate when they were actually false. This claim stems from the Individual Defendants' "power and authority to control the contents of [Range's] SEC filings" and public correspondence. Am. Compl. ¶ 22. Jacobowitz alleges that Range failed to disclose adverse facts and that Range's positive representations in its financial statements were materially false or misleading. *Id.* The SOX certifications stated that, to the signors' knowledge, the information in each filing fairly represented Range's financial condition and operations and that Range had internal controls to ensure material information would be reported. *See id.* ¶ 43.

---

[16]Jacobowitz alleges that the statements in the following certifications—which are substantially the same in substance to the quoted language, though for different time periods—are also actionable. The following certifications were signed by Defendants Ventura and Manny: 2Q2016 10-Q, Defs.' App. at 20, 21, Am. Compl. ¶ 45; 3Q2016 10-Q, Defs.' App. at 30, 31, Am. Compl. ¶ 47; 2016 10-K, Defs.' App. at 66, 67, Am. Compl. ¶ 54; 1Q2017 10-Q, Defs.' App. at 77–78, Am. Compl. ¶ 56; 2Q2017 10-Q, Defs.' App. at 88–89, Am. Compl. ¶ 58; 3Q2017 10-Q, Defs.' App. at 98–99, Am. Compl. ¶ 60; 2017 10-K, Defs.' App. at 133–34, Am. Compl. ¶ 69; 1Q2018 10-Q, Defs.' App. at 143–44, Am. Compl. ¶ 71.

The following certifications were signed by Defendants Ventura and Scucchi: 2Q2018 10-Q, Defs'. App. at 153–54, Am. Compl. ¶ 74; 3Q2018 10-Q, Defs.' App. at 163–64, Am. Compl. ¶ 76; 2018 10-K, Defs.' App. at 201–02, Am. Compl. ¶ 83; 1Q2019 10-Q, Defs.' App. at 211–12, Am. Compl. ¶ 85; 2Q2019 10-Q, Defs.' App. at 222–23, Am. Compl. ¶ 86; 3Q2019 10-Q, Defs.' App. at 232–33, Am. Compl. ¶ 88; 2019 10-K, Defs.' App. at 272–73, Am. Compl. ¶ 95; 1Q2020 10-Q, Defs.' App. at 284–84, Am. Compl. ¶ 97; 2Q2020 10-Q, Defs.' App. at 293–94, Am. Compl. ¶ 99; 3Q2020 10-Q, Defs.' App. at 304–05, Am. Compl. ¶ 101.

[17]Defendants Ventura, Scucchi, Manny, and Ginn are together referred to as the "Individual Defendants."

Defendants' argument is twofold. *First,* they assert that Jacobowitz failed to plead particularized facts showing any statements in the SOX certifications were themselves false. *Second*, they argue that Range's disclosures which were affirmed by these certifications did not contain any actionable misstatements. The Court agrees with Defendants on both points.

Jacobowitz fails to plead that there is anything false or misleading about the content of the certifications themselves. Jacobowitz has not identified any accounting errors and has not suggested that Range lacked internal controls or that these controls did not provide reasonable assurances that its financial reporting complied with GAAP. He further failed to plead facts showing any actionable misstatement in Range's periodic securities disclosures. Jacobowitz thus failed to adequately plead that the certifications of these financial statements were false or misleading. Further, his general assertion that the Individual Defendants' falsely certified Range's filings were accurate is insufficient to allege a claim for securities fraud under Rules 12(b)(6), 9(b), and the PSLRA. *See, e.g., Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 273 F. Supp. 3d 650, 684 (N.D. Tex. 2017). Thus, Jacobowitz fails to adequately plead facts showing the SOX certifications signed by the Individual Defendants contained materially false or misleading statements or affirmations.

### c.  *Scienter for SOX Certifications*

Even if Range's securities disclosures contained false or misleading statements, Jacobowitz failed to adequately allege a strong inference of scienter. Signing SOX certifications support scienter only "if the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions." *Mun. Empls.' Ret. Sys. of Mich.,* 935 F.3d at 434 (quoting *Shaw Grp., Inc.*, 537 F.3d at 545). A defendant's signature on SOX certifications, without more, does not support a strong scienter inference. *Id.* (citing *Cent. Laborers' Pension Fund*, 497 F.3d at 555).

Here, Jacobowitz failed to allege any conspicuous accounting

irregularities that support a strong inference that the Individual Defendants knew, in signing the SOX certifications, that Range's financial statements contained material misstatements or omissions. Nor does he allege that Individual Defendants were on notice of "glaring irregularities or red flags." Thus, Jacobowitz's allegations are not sufficient to establish a cogent and compelling inference of scienter for the Individual Defendants. *See id.* This provides an independent basis for dismissing his SOX claim.

### 7. Jacobowitz failed to plead particularized facts that raise a strong inference of scienter for any of his § 10(b) claims.

The Court will analyze Jacobowitz's scant allegations of scienter for his other § 10(b) claims. Even if Jacobowitz had properly alleged that Defendants made material, false or misleading statements (which he did not), his claims fail for the independent reason that he does not plead a cogent theory of scienter for his § 10(b) claims.

To proceed on his claims, Jacobowitz's pleadings must "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the requisite state of mind." *Six Flags Ent. Corp.*, 524 F. Supp. 3d at 533 (quoting *Neiman*, 854 F.3d at 746). In this Circuit, the "required state of mind [for scienter] is an intent to deceive, manipulate, defraud or severe recklessness." *Owens*, 789 F.3d at 535. To plead facts raising a "strong inference" of this state of mind under the PSLRA, the allegation "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

"[O]missions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendants acted with the required state of mind.'" *Id.* at 326. Though "circumstantial evidence can support a strong inference of scienter, allegations of motive and opportunity standing alone will not suffice." *Plains*, 307 F. Supp. 3d at 616 (quoting *BP I*, 843 F. Supp. 2d at 746). Thus, "simply pleading that a defendant had access to internal information that contradicted his or her public statements is not enough." *Id.* (citing *In re BP P.L.C. Sec. Litig.*, 852 F. Supp.2d 767, 817

(S.D. Tex. 2012) ("*BP II*")). To raise a scienter argument based on the "availability of some internal document setting out certain facts, the complaint must make specific allegations about the document, its author, contents and character, and when and by whom it was received, to link it to the person making the challenged statement, at the time the statement was made." *Id.* (citing *Abrams*, 292 F.3d at 432).

Jacobowitz argues he adequately alleged scienter based on six grounds: (1) Defendants' access to pertinent information; (2) Defendants' admissions; (3) the DEP's investigation and findings, combined with the Shirocky Memo; (4) the confidential witnesses' allegations; (5) the SOX Certifications; and (6) Defendants' motive. The Court disagrees with each theory. As detailed below, the Court concludes that Jacobowitz failed to adequately plead facts showing a strong inference of the required state of mind for the Statements quoted in the preceding sections. This provides an independent basis for the Court to dismiss each of Jacobowitz's § 10(b) claims.

a. *The Court will discount Confidential Witness statements and reject improper group-allegations.*

As a preliminary matter, Jacobowitz bases much of his scienter allegations on five Confidential Witnesses ("CWs"). But as required by the Fifth Circuit, "courts must discount allegations from confidential sources." *Six Flags Ent. Corp.*, 524 F. Supp. 3d at 524 (quoting *Mun. Empls.' Ret. Sys. of Mich.*, 935 F.3d at 433) (citation omitted). At minimum, Jacobowitz must allege "particular job descriptions" and "individual responsibilities." *Id.* More to the point, however, his CW allegations do not address the specific statements at issue, the DEP investigation, the 42 wells at issue, or Range's accounting. *See* Am. Compl. ¶¶ 31, 37; Defs.' Br. at 18. The CWs' general assertions are instead untethered from the events relevant to Jacobowitz's theories of fraud. The Court will thus appropriately discount the allegations from these CWs, as required in the Fifth Circuit.

Further, the Fifth Circuit rejected the "group pleading" approach to scienter upon which Jacobowitz relies. *See Shaw Grp., Inc.*, 537 F.3d at 533–34 (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,* 365 F.3d 353, 366 (5th Cir. 2004)). So, to adequately plead scienter, plaintiffs

must make "individualized, specific allegations about each speaker's state of mind for each allegedly false or misleading statement." *Plains*, 307 F. Supp. 3d at 638 (citing *Shaw Grp., Inc.*, 537 F.3d at 533). The individualized and specific allegations must generate a "cogent and compelling inference that each defendant intended to deceive or was severely reckless as to whether the statement was true." *Id.* at 639. The alleged facts must make it as likely as not that each defendant's state of mind was culpable. *Id.* (citing *Tellabs*, 551 U.S. at 324).

Jacobowitz's pleadings are largely based on unspecific, improper group-allegations. For instance, though he alleges some Individual Defendants received reports, he does so based on their positions as senior executive officers (verified by CW statements). Such allegations fall short of Jacobowitz's burden under Rule 9(b) and the PSLRA. *See Diodes, Inc.*, 810 F.3d at 957 ("[T]his court has rejected the 'group pleading approach to scienter,' and focuses on the state of mind of the corporate officials who make, issue, or approve the statement rather than the 'collective knowledge of all the corporation's officers and employees.'") (quoting *Shaw Grp.*, 537 F.3d at 533). But "the PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud." *Southland Sec. Corp*, 365 F.3d at 365. Here, the Amended Complaints fails to do so. There are no allegations that any Individual Defendant acted with scienter in making any particular statement. Indeed, as the Motion notes, Jacobowitz "alleges *literally nothing* about three of the four Individual Defendants, making no scienter allegations about Scucchi, Manny, and Ginn." Defs.' Br. at 18 (emphasis in original); *see* Am. Compl. ¶¶ 31, 37. Because these constitute improper group-pleading allegations, the Court has another basis for dismissing Jacobowitz's claims.

### b. *Jacobowitz's reference to internal reports and the mere access to information fails to support scienter.*

Jacobowitz's Amended Complaint asserts that, based on a CW's say-so, Ventura "received reports on the status of each well, including which wells were producing and which wells were shut down." Am. Compl. ¶ 37. Jacobowitz's Response (but not the Amended Complaint)

argues that these "reports" specifically notified Ventura that "the forty-two wells Range sought to misclassify as 'inactive' had not produced oil or natural gas for twelve consecutive months." Pl.'s Resp. at 20–21. Jacobowitz argues that another CW "confirmed that Defendant Ventura was 'heavily involved in the operations in [Pennsylvania].'" *Id.* at 20 (quoting Am. Compl. ¶ 37).

Defendants argue that Jacobowitz failed to plead facts showing "when the reports were created, when they were presented to Defendants, or whether Defendants actually saw the reports." Defs.' Br. at 19 (quoting *Six Flags Ent. Corp.*, 524 F. Supp. 3d at 536). They assert that Jacobowitz's description of these "reports" lack any detail that would "notify" anyone that Range "sought to misclassify" the 42 wells. *Id.*; ECF No. 77, Reply at 8. Defendants thus reason that "merely receiving reports that showed well production [has] no bearing on Ventura's scienter." *Id.* at 9. Nor does the Amended Complaint, they argue, "allege whether Ventura was involved in or aware of how Range classified wells as 'active,' 'inactive,' or 'abandoned.'" *Id.* Similarly, Defendants assert that Jacobowitz's "vague allegation that [] Ventura was 'heavily involved' in operations" fails to plead facts specifying what he was involved in or how such conduct would be fraudulent. Defs.' Br. at 19–20 (citing *Shaw Grp.*, 537 F.3d at 535) (plaintiff cannot plead scienter by inferring a defendant was aware of an offense based merely on his position at the company).

The Court agrees with Defendants and accordingly adopts its prior holding that, without more, allegations of an executive receiving operational reports are insufficient to support a strong inference of scienter. *See Six Flags Ent. Corp.*, 524 F. Supp. 3d at 536; *see also Neiman*, 854 F.3d at 748–49 (rejecting reliance on well production reports as a basis for scienter). The Court thus concludes that Jacobowitz's allegations of scienter based on these internal reports are insufficient to support the requisite inference of scienter.

   c. *Neither the DEP inquiry and settlement nor the Shirocky Memo provides a basis for inferring scienter.*

The mere fact that the DEP investigated Range provides no basis for a strong inference of scienter "without facts showing that a specific

person knew of any purported wrongdoing." *Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d at 871 (declining to find scienter existed based on an ongoing SEC investigation). The Court also rejects Jacobowitz's argument that Range's entering the CACP with the DEP admits a basis for establishing scienter to commit securities fraud.

Jacobowitz argues "Defendants admitted their misconduct in the CACP." Am. Compl. ¶¶ 36, 37; Pl.'s Resp. at 21. Neither his brief nor his Amended Complaint give any further detail on precisely what alleged misconduct gives a basis for his scienter argument. The paragraphs from the CACP that Jacobowitz claims Range adopted—A through H, K and M—concern only background facts.[18] The CACP includes no concession of intentional or reckless wrongdoing by Range, and the DEP's view that Range failed to comply with applicable regulations is memorialized in Paragraphs I, J, L, and N through P, to which Range specifically did not assent. *See* CACP, Assessment ¶ 3(a)–(b).

Instead, Jacobowitz merely points to Range's statement in its Code of Ethics that complying with laws and regulations is a "minimum, essential condition for performance of our duties." Pl.'s Resp. at 5 (citing Am. Compl. ¶ 38). As detailed above, this unattributed, generalized statement from Range's online Code of Ethics does not support Jacobowitz's arguments. Jacobowitz thus falls woefully short of pleading with particularity facts indicating a strong inference that the defendants acted with the requisite state of mind. *See Six Flags Ent. Corp.*, 524 F. Supp. 3d at 533

Jacobowitz also attempts to bootstrap scienter from the Shirocky Memo (the inadvertent disclosure of which led to the initial DEP investigation). This too fails. The Amended Complaint never alleges who at Range was aware of the Memo, and the Memo itself gives no evidence of fraud. Further, as Defendants point out, when the Memo was drafted, the well in question was not "abandoned" because it had produced within the last 12 months. *See* CACP, Ex. C (September 2017 memo stating the well last produced in December 2016). Defendants thus argue that

---

[18]Am. Compl. ¶ 36 n.5 (citing https://files.dep.state.pa.us/newsroom/Newsroom PortalFiles/Range_Executed_CACP.pdf).

Jacobowitz "alleges nothing to show the inconsistency between the memo and Range's regulatory submission was intentional, nor who at the company was aware of the inconsistency, nor whether anyone at the company knew any other well applications were inconsistent." Reply at 9. Instead, Defendants argue Jacobowitz simply assumes that because the DEP eventually disagreed with Range's 42 well classifications, Range must have intentionally and fraudulently misclassified those wells. *Id.* The Court concludes Jacobowitz failed to plead an inference of fraudulent intent that is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314.

### d. The Confidential Witness Allegations

As noted above, Jacobowitz relies heavily on generalized CW statements without "discounting" them or providing corroborating "documentary evidence and/or a sufficient general description of the personal sources of the plaintiffs' beliefs." *Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d at 873 (citing *Shaw Grp.*, 537 F.3d at 535). None of the allegations concern the DEP investigation, the Memo, or any of the 42 wells at issue; nor do they allege any specific instances in which Range allegedly misclassified any wells. Am. Compl. ¶ 31. The allegations instead focus on Range's "incentive" to classify wells as inactive. *Id.* For instance, the CW statement that Range "classified wells in a way that made it look like they had more producing wells then they did" says nothing about whether there was actual misclassification; who knew about the classifications; how often, where, or when that occurred. *See id.* And a general motive to maintain profitability, standing alone, does not show scienter under the PSLRA.

Another CW statement purports to identify a "history of violations" by identifying a single past regulatory proceeding against Range and asserting this somehow "corroborated the Company's history of yearly DEP and government investigations." *Id.* ¶ 37. This CW statement alleges nothing about any individual's knowledge of the allegations in this case, the 42 wells at issue, the status or substance of the DEP investigation more broadly, or the falsity of any statements in Range's disclosures. *See id.*

These CW statements, properly discounted, hardly move the needle on scienter.

### e. The SOX certifications fail to support his scienter argument.

Jacobowitz next attempts to show scienter by merely pointing to the fact that the Individual Defendants signed the SOX certifications for Range's SEC filings. Pl.'s Resp. at 23–24. He specifically argues that "Defendants Manny, Ginn, Ventura and Scucchi – Range's top executives -- [sic] *each* signed the misleading SEC filings, further supporting the inference of their scienter." *Id.* at 24 (emphasis in original). But more is required, even when the defendants are "top executives." *See, e.*g., *Owens*, 789 F.3d at 542–46 (affirming dismissal of executives who signed filings); *Key Energy Servs.*, 166 F. Supp. 3d at 871 (rejecting reliance on SOX certifications); *Plains*, 307 F. Supp. 3d at 642–43 (same). Jacobowitz concedes that more is required but has nothing else of substance to offer. *See* Pl.'s Resp. at 24. His Response merely claims the Individual Defendants stated they knew about Range's various "costs, expenses, and obligations to abandon and plug wells, regulatory compliance, and environmental proceedings" and thus "had reason to know that their statements on these topics contained material misstatements or omissions." *Id.* These generalized, conclusory statements fall far short of the necessary particularized facts supporting a strong inference of scienter.

Jacobowitz fails to identify anything in the certifications that is false, and he does not claim that Range misstated any financial information. The Amended Complaint fails to allege any particularized facts that clearly contradict statements within the SOX certifications. To survive dismissal on this claim, Jacobowitz would have to provide facts showing that "the officer who signed the certification had a reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags.' that the financial statements contained material misstatements or omissions." *Shaw Group*, 537 F.3d at 545. Jacobowitz failed to plead such facts here.

### f. Jacobowitz's argument for motive fails to support scienter.

Finally, Jacobowitz fails to adequately plead that Defendants acted with sufficient motive to satisfy the scienter element. To properly plead

motive, plaintiffs must allege facts showing "'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" *Mun. Empls.' Ret. Sys. of Mich.*, 935 F.3d at 430–31 (quoting *Shaw Grp., Inc.*, 537 F.3d at 543).

Here, instead of alleging particularized facts showing any "concrete benefits" that Defendants would receive, Jacobowitz makes only generalized accusations about Defendants' alleged motives. For instance, he claims Defendants acted to "delay designating the wells as abandoned" based on a motive to "hold onto cheap leaseholds" and to delay the "high cost of abandoning and plugging wells." Am. Compl. ¶¶ 30, 31; Pl.'s Resp. at 31. These allegations—supported by mere CW statements—are untethered to any specific time period, wells, or individuals. Am. Compl. ¶¶ 30, 31. Instead, as Defendants assert, these claims amount merely to a company-wide motive to increase profits and decrease costs by classifying wells as "inactive." Defs.' Br. at 19.

Defendants further argue, even accepting the allegation that Range misjudged how it should have classified certain wells as true, that "poor business judgment—even if attributable to monetary incentives—does not establish an inference of recklessness that is cogent and compelling." *Owens*, 789 F.3d 544–45.

The Court agrees with Defendants; Jacobowitz's pleading comes up well short of alleging particularized facts showing Defendants acted with sufficient motive to support a finding of scienter.

## B. Jacobowitz's § 20(a) claim necessarily fails.

The Court next turns to Jacobowitz's claim brought under § 20(a) of the Securities Exchange Act. Because § 20(a) claims require a predicate underlying § 10(b) violation—which is not present here—Jacobowitz's § 20(a) claim necessarily fails.

### 1. Standard for Derivative Claims Brought Under § 20(a) of the Securities Exchange Act.

Under § 20(a) of the Exchange Act, every "person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ." 15 U.S.C. § 78t(a).

"Control person" liability under § 20(a) is derivative, predicated on the existence of an independent violation of the securities laws. *See Whole Foods Mkt., Inc.*, 905 F.3d at 905. Along with his § 10(b) and Rule 10b-5 claims, Jacobowitz alleges the Individual Defendants are liable as "control persons" under § 20(a) of the Exchange Act. 15 U.S.C. § 78t(a); Am. Compl. ¶¶ 131–33. To impute liability to the Individual Defendants—the alleged "control persons" of Range under § 20(a) of the Exchange Act—Jacobowitz must show a "primary violation" under § 10(b); if the § 10(b) claim is inadequate, then so is the § 20(a) claim. *Six Flags Ent. Corp.*, 524 F. Supp. 3d at 525 (quoting *Southland Sec. Corp.*, 365 F.3d at 383); *see also Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1021 n.8 (5th Cir. 1996) ("Because the plaintiffs have failed to state a claim for any predicate securities fraud offense under § 10(b), Plaintiffs have necessarily failed to state a claim against [defendant] for "controlling person" liability under § 20(a)."). Thus, when plaintiffs fail to adequately plead a primary violation by a "control person," courts should dismiss the § 20(a) claim. *Southland*, 365 F.3d at 383 ("Control person liability is secondary only and cannot exist in the absence of a primary violation.").

Because the Court held above that Jacobowitz failed to adequately plead a primary violation under § 10(b), no grounds exist for secondary, control-person liability under § 20(a) against the Individual Defendants. *See id.*; *see also Lovelace*, 78 F.3d at 1021 n.8. The Court therefore concludes that Jacobowitz failed to adequately plead a violation of § 20(a), and this claim will be **DISMISSED with prejudice.**

### ORDER

For the above-stated reasons, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 69); Jacobowitz's claims are therefore each **DISMISSED with prejudice**.

**SO ORDERED** on this **31st day** of **March, 2022.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE